## George M. Allen vs. Edmund P. Ham.

*Act of 1872, c. 27, giving lien on animals, not retrospective.*

A person who had a horse in his possession, under a contract (long before made) with its owner for its keeping, at the time the act of 1872, c. 27, was passed, but who had no lien at common law nor by the terms of his contract, can claim none under that act for food or shelter furnished prior to its passage; but has one for what is afterwards supplied, provided the rights of third parties are not affected thereby.

Though no lien exists for shoeing the animal, nor for the payment of taxes assessed upon him, the insertion of a count claiming a lien for those items will not invalidate the petition.

It will be a substantial allegation that food and shelter were furnished if the petitioner state that he "kept" the animal.

It is no objection to the continuance of the lien that the horse was so kept by the petitioner for more than two years.

On exceptions.

Petition, under Public Laws of 1872, c. 27, as amended by those of 1873, c. 125, to enforce a lien upon the stallion "Joe Hooker," under the circumstances stated in the opinion.

The respondent demurred to the petition, for the reasons considered by the court; and excepted to the overruling of his demurrer.

*D. D. Stewart*, for the respondent.

The petitioner had no lien at common law. *Jackson* v. *Cummins*, 5 M. & W., 342; *Judson* v. *Etheridge*, 1 Cr. & M., 743; *Grinnell* v. *Cook*, 3 Hill, 491; *Goodrich* v. *Willard*, 7 Gray, 183.

The contract was made August 14, 1871. Subsequent legislation did not affect an already existing contract. *Hastings* v. *Lane*, 15 Maine, 134; *Given* v. *Marr*, 27 Maine, 212; *Whitman* v. *Hapgood*, 10 Mass., 439; *King* v. *Tirrell*, 2 Gray, 333; *Gerry* v. *Stoneham*, 1 Allen, 319; *Bridgewater Bank* v. *Copeland*, 7 Allen, 140.

By joining a non-lien claim for shoeing and taxes, he has vitiated his whole petition. *Fairfield* v. *Burt*, 11 Pick., 245; *Salem Bank* v. *Redman*, 57 Maine, 405.

*William Folsom*, for the petitioner.

BARROWS, J.   This petition, to which a general demurrer was filed at the return term, December, 1873, bears date October 1, 1873, and alleges in substance that the respondent on the fourteenth day of August, 1871, being the owner of a certain valuable horse, made a contract with this petitioner to keep him for one dollar a day "for each and every day he should keep said horse," and thereupon, on the same day delivered the horse to this petitioner, "who has well and carefully kept the same . . to the present time being for the space of seven hundred and seventy-seven days;" that the keeping is well worth $777, but the respondent has paid only $118.50, leaving due $658.50, for which this petitioner claims a lien.

The petitioner further avers, in what is substantially a second count, that while thus in his keeping he expended sixteen dollars and twenty-four cents for shoeing and twenty dollars for taxes assessed upon the horse, for which sums also, "if the court judge him lawfully entitled thereto," he claims a lien; and finally he prays for notice to the respondent and a process to enforce his lien.

The first question presented by the demurrer is whether the petitioner is entitled to any lien upon the horse for his keeping.

Not being an innkeeper, or farrier, or trainer, he has no such lien by the common law.   *Miller* v. *Marston*, 35 Maine, 153.

He has none by any agreement with the respondent amounting to a pledge.   He claims the lien by virtue of statute.   Public Laws of 1872, c. 27, amended by Laws of 1873, c. 125, under which this process is brought to enforce it.

In support of the demurrer it is argued that this statute, not enacted until some six months after the contract was entered into, cannot give the petitioner a lien which had no existence when the contract was made.

The question here raised, vital to the present process, is not free from difficulty.   If the rights of any third persons not parties to the contract were to be affected, we should say unhesitatingly that the statute could not confer a lien to enforce contracts previously

made. We think it was upon this ground that the brief decision in *Kendall* v. *Folsom, Adm.*, 34 Maine, 198, was made.

In that case the plaintiffs attempted to enforce, against the administrator of a deceased insolvent, a lien which, when it accrued, was liable to be destroyed by the death and insolvency of the debtor, by force of a subsequent statute whereby the lien was made to subsist notwithstanding such death and insolvency. The lien claimed was upon a building and the lot on which it stood, for materials furnished. The case shows that the building was on land leased to the intestate by a third person, and had been sold by the administrator, under the order of the judge of probate, prior to the passage of the statute relied on. The court say in that case that the statute could only act prospectively; and this, we think, was right.

Must the same result follow when the rights of no third parties intervene, and the only effect of the statute is to give the creditor an additional remedy for the collection of his debt? In such a case we see no good reason why he may not avail himself of it. It has been settled by repeated decisions in this State that such a lien is only a part of the remedy afforded by law for the collection of the debt, and that like all matters pertaining to the remedy and not to the essence of a contract, it is wholly within the control of the law-making power and liable to be modified, or wholly abrogated, even while proceedings are pending in court for its enforcement. *Bangor* v. *Goding*, 35 Maine, 73; *Gray* v. *Carleton*, Id., 481; *Frost* v. *Ilsley*, 54 Maine, 351.

It would seem to follow from these decisions that our court have considered statutes giving, modifying, or taking away one of these liens, as not belonging to that class which are prohibited by fundamental legal principles from having a retrospective effect.

Was it intended by the legislature that it should so operate?

It runs thus: "Any person who pastures, feeds, or shelters animals by virtue of a contract with or by consent of the owner shall have a lien thereon for the amount due for such pasturing, feeding or sheltering, to secure payment thereof," &c., and by § 2 it is provided that the act shall take effect when approved.

Allen v. Ham.

While we think this language is sufficiently comprehensive to afford a lien to those who might thereafterwards furnish keeping for animals under a contract previously entered into, we do not think it undertakes to confer such lien for any sum that had previously accrued under such contract.

We recognize it as a well settled rule that a retroactive effect is not to be given to statutes unless the design that they shall so operate is clearly expressed, or such effect is required by necessary implication.

In view of the provision that this act should take effect when approved, and that a continued keeping of the animal under an agreement previously made must be held to be a keeping "by consent of the owner," we do no violence to the rule by holding that the statute gave a lien from the date of its enactment for all subsequent keeping under an existing agreement, and in so doing we construe it liberally in favor of the remedy ; but if it had been the intention to give security for so much of the debt as had previously accrued, it would have been easy to say so, and as the statute speaks only in and from the present, the lien must be regarded as covering only the subsequent keeping.

The second cause of demurrer alleged is that the petitioner in his second count has claimed a lien for the sum paid for shoeing the horse and for the taxes assessed on him, and that, as there is clearly no lien for these items, there is a misjoinder of counts, of which the respondent may avail himself by a general demurrer. Manifestly the lien does not extend to these outlays ; but we do not think the result claimed follows.

There is not necessarily a misjoinder of counts which would be available on demurrer because it may turn out that a plaintiff has no legal cause of action on one of them. With respect to the joinder of counts, one sure test of its propriety is—can the same plea be pleaded and the same kind of judgment be rendered on both ? If yea, the joinder is certainly proper. But the question is not whether the party plaintiff is entitled to judgment on both. If one declares on two promissory notes one of which is void as

being given for an illegal consideration, or on Sunday, his declaration is not therefore bad on demurrer, though he has no legal cause of action upon one of his counts.

It is true that if one having a lien confounds in one judgment, lien claims and non-lien claims he forfeits his lien. But the character of this process is such that it necessarily involves a determination of the question of lien or no lien, and also of amounts due. It would be competent for the petitioner, after default, to remit all sums claimed as to which no lien existed. It would be at his own proper peril if he included them. His prayer is for a process to enforce such lien as he has by law. We cannot hold it to be good ground of demurrer that he claims more than he is entitled to, if it be found that he is entitled to something.

There is an inherent difficulty about applying the technical common law rules and forms of pleading to a statute process of this sort. It is not a writ, but a petition for such decree as the court may find proper under the circumstances to enforce the petitioner's rights.

It is further urged that the petitioner has not alleged enough to bring his case within the statute—that he should have used the language of the statute, and averred that he had "pastured, fed, or sheltered" the horse, one or all, instead of using the word "keep" to cover the whole.

The statute prescribing the form of the remedy directs the filing of a petition "briefly setting forth the nature and amount of his claim, a description of" the animal, "and the name and residence of its owner, if known to him, and a prayer for process to enforce his lien."

We think its requirements are sufficiently observed in the petition before us.

The word "keep" as applied to animals has a peculiar signification. "Keep, v. t., to tend; to feed; to pasture; to board; to maintain; to supply with necessaries of life." Web. Dic.

And the noun, "keeping" means "feed; fodder, e. g., the cattle have good keeping," Id.

The plaintiff avers that he has "well and carefully kept" this horse. . We think that in the connection in which it stands, this means that he has done so under the contract which he alleges, and that it is sufficient to bring his case within the purview of the statute upon which he relies. It is further suggested that the statute was designed only to give a lien for the pasturing, feeding or sheltering of animals for brief periods, and not for any such long term as is covered by this petition. But we find nothing in the statute to limit the time except the terms of the contract, or the consent of the owner.

The respondent having demurred at the first term has the right to plead anew upon payment of costs.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.