DIAMOND INTERNATIONAL
CORPORATION

v.

PHILIP L. GADBOIS & SONS, INC. and
Philip Gadbois and Ormand W. Bedell
and Patricia A. Bedell.

DIAMOND INTERNATIONAL
CORPORATION

v.

Philip GADBOIS and/or Philip L. Gadbois
& Sons, Inc., and Philip N. Labbe a/k/a
Philippe N. Labbe and Reinette G.
Labbe.

Supreme Judicial Court of Maine.

Aug. 21, 1978.

Smith, Elliott, Wood & Nelson, by Stephen R. Lamson (orally), Roger S. Elliott, Randall E. Smith, Saco, for plaintiff.

Gaulin & Kimmel by Kenneth E. Kimmel (orally), Biddeford, for Philip N. Labbe.

Herschel M. Lerman (orally), Biddeford, for defendants Bedell.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

DELAHANTY, Justice.

Seeking to enforce mechanics' liens for materials used by defendant Philip L. Gadbois & Sons, Inc. (Contractor) in the construction and alteration of houses owned by defendants Ormand W. and Patricia A. Bedell and Philip N. and Reinette G. Labbe (Homeowners), the plaintiff, Diamond International Corporation (Diamond), instituted the instant suits in the York County Superior Court pursuant to 10 M.R.S.A. §§ 3251 *et seq.* Upon stipulated facts, the presiding Justice granted summary judgments to the Homeowners.[1] We deny Diamond's appeals.

The undisputed facts reveal that pursuant to contractual agreements, Diamond supplied materials to the Contractor for work that it was doing on the Homeowners' residences, the last materials being furnished during May and early June of 1976. No contracts existed between the Homeowners and Diamond. Prior to July 29, 1976, the Homeowners fully paid the Contractor for the materials supplied by Diamond without notices from Diamond that it had not been paid by the Contractor. Diamond timely filed notices of lien in August of 1976, 10 M.R.S.A. § 3253, and brought both of these actions within the statutory 120-day period.

The wrinkle in these cases developed as a result of legislative action which occurred

---

1. After Diamond commenced the actions, it voluntarily dismissed the suits against the Contractor pursuant to M.R.Civ.P. 41(a)(1)(i). Although no formal order of consolidation was entered below, the cases, each presenting the identical question and involving Diamond and the Contractor, were argued to, and decided by, the presiding Justice at the same time. This de facto consolidation continued on appeal.

during 1976. Repealing the then existing 10 M.R.S.A. § 3255, the 107th Legislature enacted P.L.1975, ch. 734, An Act to Protect Owners and Bona Fide Purchasers of Real Property from Unrecorded Mechanics' Liens and to Protect Them from Double Payment to Contractors and Subcontractors. Under the legislative scheme, effective July 29, 1976, the repealed § 3255 effectively became subsection 1 of the new 10 M.R.S.A. § 3255,[2] and two new subsections were adopted. Subsection 2 deals with the rights of a bona fide purchaser of liened property. Subsection 3 provides property owners with a defense against double payment.[3] As pertinent to these appeals, 10 M.R.S.A. § 3255(3) provides a homeowner with a defense against a mechanics' lien action to the extent that the homeowner has already paid the person with whom he has directly contracted (Contractor) for materials or goods. The defense is not available for payments made either 1) after notice to the homeowner from the supplier of materials (Diamond), who did not have a contract with the homeowner, that such supplier might be claiming a lien for materials or 2) after commencement of an action to enforce said lien.

At trial, each of the Homeowners raised the defense of payment. The parties have stipulated that neither of the Homeowners ever received the statutory notice set forth

2. Section 3255(1) of 10 M.R.S.A. reads as follows:

The liens mentioned in sections 3251 to 3254 may be preserved and enforced by action against the debtor and owner of the property affected and all other parties interested therein, filed with the clerk of courts in the county where the house, building or appurtenances, wharf, pier or building thereon, on which a lien is claimed, is situated, within 120 days after the last of the labor or services are performed or labor, materials or services are so furnished, except as provided in section 3256.

3. In pertinent part, 10 M.R.S.A. § 3255(3) states:

If the labor, materials or services were not performed or furnished by a contract with the owner of the property affected, the lien described in this chapter may only be enforced against the property affected to the extent of the balance due to the person with whom the owner has directly contracted to

in 10 M.R.S.A. § 3255(3). As earlier mentioned, payments were made before the instant suits were commenced. Thus, if the Homeowners were entitled to rely upon the new 10 M.R.S.A. § 3255 effective July 29, 1976, they plainly had valid defenses to Diamond's suits.

At issue is the single question of whether the Homeowners could assert defenses unavailable when the inchoate liens first arose in May and June of 1976 but in effect when Diamond filed its notices of lien and instituted suits in August and September of 1976.

In *Bangor v. Goding,* 35 Me. 73 (1852), a subcontractor had not been paid for work it had done on a schoolhouse built for the City of Bangor by a general contractor. To perfect its lien on the school, the subcontractor attached the building and the lot and instituted suit against the contractor. *While the suit was pending,* that portion of the lien law was deleted which gave a lien to certain third parties who had not contracted directly with the owner. The Court found that absent a saving clause expressly exempting those third parties who had already furnished labor or materials from the new lien law's operation, the subcontractor was not entitled to rely upon the old law. In unmistakably clear language, the Court declared:

> perform or furnish the labor, materials and services on which that lien claim is based. The defense established by this subsection shall only be available with respect to sums paid by the owner to the person with whom the owner has directly contracted where payment was made prior to commencement of an action to enforce such lien by the person performing or furnishing labor, materials or services without a contract with the owner or a written notice from the person performing or furnishing labor, materials or services without a contract with the owner which sets forth a description of the property sufficiently accurate to identify it; the names of the owners; that the person giving notice is going to perform or furnish, is performing or furnishing or has performed or furnished labor, materials or services; that the person giving notice may claim a lien therefor and which shall contain the following warning at the top of the notice . . . .

*The amendment did not act retrospectively to destroy the attachment or any other right, but it did operate from the time, when it became a law, upon all existing persons and rights alike.* Those, who had not already acquired and perfected their rights under the provisions of the statute, before it was amended, were left without any authority to proceed further and by subsequent proceedings to levy upon the property of another than their debtor in payment of their debt. *Id.* at 74. (emphasis supplied).

*See Gray v. Carleton,* 35 Me. 481 (1853).

Similarly, in *Frost v. Ilsley,* 54 Me. 345 (1867), when the plaintiffs' lien first arose, the law provided that a lien remained effective ninety days after payment became due according to the terms of the contract. Before payment was due, the lien laws were amended to provide that a lien was effective for only ninety days after furnishing labor or materials. The Court found that the new law governed the subsequent suit.

The lien is the creature of the statute. It is not part of the contract, but a merely incidental accompaniment, deriving its validity only from positive enactment and liable always to be controlled, modified or taken away by subsequent enactment, and such modification or removal cannot be considered as in any degree impairing the obligation of the contract itself. The lien is but a means of enforcing the contract, a remedy given by law, and *like all matters pertaining to the remedy, and not to the essence of the contract, until perfected by proceedings whereby rights in the property over which the lien is claimed have become vested, it is entirely within the control of the lawmaking power, in whose edict it originated. Id.* at 351. (emphasis supplied).

Commenting on these cases, *Allen v. Ham,* 63 Me. 532, 534 (1874), stated:

It has been settled by repeated decisions in this State that such a lien is only a part of the remedy afforded by law for the collection of the debt, and that *like all matters pertaining to the remedy and not to the essence of a contract, it is wholly within the control of the law-making power and liable to be modified, or wholly abrogated, even while proceedings are pending in court for its enforcement.* (emphasis supplied).

 These decisions, never reversed, modified, or questioned, *see, e.g., Hayes v. Briggs,* 106 Me. 423, 76 A. 905 (1910), continue as controlling in our jurisdiction. Together they establish that in the absence of a saving clause, a change in the mechanics' lien laws operates prospectively from the effective date of the modification on all existing actions to preserve and enforce such liens, even those that are pending in court. Until a lien has been perfected, lienor has no vested right to rely upon an existing lien law. A fortiori when the existing 10 M.R.S.A. § 3255 was modified without a saving clause prior to Diamond filing notices of its liens pursuant to 10 M.R.S.A. § 3253, the new 10 M.R.S.A. § 3255 controlled the subsequent suits.[4]

 Under the provisions of 10 M.R.S.A. § 3255(3), the Homeowners had valid defenses of payment to Diamond's suits. Summary judgments were properly granted.

The entry in each case shall be:

Appeal denied.

Judgment affirmed.

GODFREY, J., did not sit.

---

4. For the purposes of this discussion, we perceive no substantial difference between a legislative modification of the existing lien laws accomplished by deleting a provision of the lien laws, *Bangor v. Goding, supra,* adopting an additional requirement for the preservation of a lien, *Frost v. Ilsley, supra,* or as in the instant case, enacting a defense to the enforcement of a lien. In each instance, the modification is operative prospectively from the effective date of the change on all liens that have not yet been perfected.