DEBORAH JONES PATTERSON, By NEXT FRIEND, BOBBY JONES v. RALPH CONNER REID AND WIFE, NANCY L. REID

No. 7026SC472

(Filed 16 December 1970)

1. Rules of Civil Procedure § 56— motion for summary judgment — consideration of the record

When a motion for summary judgment is made, the court must look at the record in the light most favorable to the party opposing the motion.

2. Animals § 2— injuries inflicted by domestic animal — prerequisites for recovery

To recover for injuries inflicted by a domestic animal, a claimant must show (1) that the animal was in fact vicious, and (2) that the owner or keeper knew or should have known of its vicious propensities, the basis of the claim not being negligence but rather the wrongful keeping of the animal with knowledge of its viciousness.

3. Animals § 2— "keeper" of domestic animal

The keeper of an animal is one who, either with or without the owner's permission, undertakes to manage, control or care for the animal as owners in general are accustomed to do.

4. Rules of Civil Procedure § 56— motion for summary judgment — supporting affidavits — unsupported allegations in pleading

In order to show that there is a genuine issue as to facts contained in defendants' affidavits filed in support of their motion for summary judgment which, if established, would defeat plaintiff's claim, plaintiff may not rest upon the mere allegations of her pleading, but her response, by affidavits or otherwise as provided in Rule 56, "must set forth specific facts showing that there is a genuine issue for trial." Rule of Civil Procedure No. 56(e).

5. Animals § 2— action for injuries received in fall from horse — defendants' supported motion for summary judgment — sufficiency of plaintiff's affidavits opposing the motion

In this action for personal injuries received by plaintiff when she was thrown from an allegedly vicious horse kept in defendants' pasture, the trial court should have allowed defendants' motion for summary

Patterson v. Reid

judgment where affidavits filed by defendants in support of their motion disclosed that defendants are prepared to offer competent evidence (1) that their only connection with the horse was that they permitted its owner, their tenant, to keep the horse in their pasture, (2) that they did not at any time manage, control or care for the horse in the manner of owner, and (3) that the horse was not in fact vicious and defendants neither knew nor had any reason to know of any vicious propensity on its part, and affidavits offered by plaintiff in opposition to defendants' motion failed to show that she can offer competent evidence to prove (1) that defendants were "keepers" of the horse or (2) that defendants either knew or had reasonable cause to know of any vicious propensities the animal may have had.

6. Rules of Civil Procedure § 56— motion for summary judgment — consideration of hearsay statements in affidavits

Affidavit statements based on hearsay would not be admissible in evidence and should not be considered in passing on a motion for summary judgment.

7. Animals § 2— action for injuries received in fall from horse — negligence in encouraging minor to ride horse — defendants' motion for summary judgment — sufficiency of plaintiff's affidavits opposing the motion

Even if minor plaintiff's complaint for injuries she received when thrown from a horse is sufficient to state a valid claim for relief on the theory that defendants negligently encouraged plaintiff to ride the horse by allowing her to use saddles and other riding equipment which they owned without adult supervision and protection, affidavits offered by plaintiff are insufficient to overcome defendants' properly supported motion for summary judgment, where they fail to show that plaintiff can offer competent evidence to prove that defendants knew or should have known that the horse was vicious or that defendants actively encouraged plaintiff to ride the horse.

ON *certiorari* to review order of *Thornburg, J.,* 27 April 1970 Civil "B" Session of MECKLENBURG Superior Court.

This is a civil action to recover damages for personal injuries suffered by plaintiff, then a ten-year-old girl, on 31 March 1963 when she was thrown from a horse (named "Rowdy") owned by a Mr. Billy Ray Terry and which was being kept in defendants' pasture. In her complaint plaintiff in substance alleged: that the horse was cared for, stabled and used as a riding horse by the defendants, their children, and employees, in the same manner as livestock owned by the defendants; that the horse was dangerous and vicious and these traits were known to defendants; that defendants failed to exercise due care by allowing the horse to be wrongfully kept on their premises and by permitting and encouraging plaintiff and other children to ride the horse by allowing them to use the saddles and other

riding equipment owned by defendants without adult supervision or other protection; and that plaintiff's injuries were proximately caused by defendants' negligence.

Defendants answered and denied that they harbored the horse, denied it was dangerous, and denied knowledge of any dangerous characteristics of the horse.

On 9 March 1970 defendants moved for summary judgment dismissing the action on the grounds there was no genuine issue as to any material fact and that defendants were entitled to a judgment as a matter of law. In support of this motion, defendants filed two affidavits, one sworn to by defendants themselves and one sworn to by Mrs. Jo Anne Terry Wray. (At the time plaintiff was injured, Mrs. Wray was the wife of Billy Ray Terry, who is now deceased.)

In defendants' affidavit, they state that on 31 March 1963 they resided on property located at 523 Main Street, Pineville, N. C., at which time they also owned adjacent property which was fenced in and used as a pasture; that Mr. and Mrs. Billy Ray Terry rented a house from defendants which was located on the back of their property behind the pasture; that during the summer of 1962 Mr. Terry bought a small horse named "Rowdy" for use by his daughter; that defendants allowed Mr. and Mrs. Terry to keep the horse in their pasture without charging any additional rent, but Mr. and Mrs. Terry were responsible for the maintenance and feeding of the horse and had full and exclusive control over it; that the horse was very gentle and was ridden by the Terry girls, ages fourteen, ten and five respectively at the time complained of; that on some occasions, and always with the express permission of Mr. and Mrs. Terry, the two daughters of defendants, who were at the time both seventeen years old, also rode the horse; that the horse was not dangerous and defendants had no knowledge of anyone ever having been hurt by it before the alleged accident on 31 March 1963; that the pasture was fenced in and defendants never gave permission to anyone to go into the pasture and ride the horse, and specifically did not give such permission to plaintiff; and that defendants had no first-hand knowledge of the accident complained of in this action.

In her affidavit, Mrs. Wray confirmed the statements contained in defendants' affidavit and expressly stated that the defendant, Dr. Reid, gave the Terrys permission to keep the horse in his pasture but that the Terrys were responsible for

Patterson v. Reid

the maintenance and feeding of the horse and had full and exclusive control over it; that she had never known Rowdy to misbehave or cause any trouble prior to 31 March 1963; and that the accident complained of in the complaint was the only incident she knew of in which anyone was allegedly hurt anywhere around Rowdy.

Plaintiff filed four affidavits in defense of the motion for summary judgment. The first was that of Pamela Clayton Jones, who stated:

"3. I knew Sherry Terry at that time personally and we rode the same school bus to school.

"4. I remember explicitly and sometime in September, 1962 that Sherry boarded the school bus one morning and that her face was skinned and bruised. I personally heard her discussing with some friends on the bus that she had been thrown by Mr. and Mrs. Terry's horse, Rowdy.

"5. I had seen this horse, Rowdy in the pasture located beside Dr. and Mrs. Reid's home."

The second affidavit was that of Jacqueline Renea Lear, a fifteen-year-old girl, who stated:

"3. I knew that Mr. and Mrs. Terry owned a horse named Rowdy and saw Rowdy on many occasions during the years of 1962 and 1963.

"4. I have visited with the Terry children in the company of Deborah Jones Patterson who at that time was my friend Deborah Jones and have seen her and her brother, Robert, ride the horse Rowdy.

"5. I never rode the horse Rowdy although my friends encouraged me to because I was afraid of the horse and was afraid that the horse would throw me if I rode it.

"6. I remember that Deborah was hurt sometime in March of 1963 although I have no first-hand knowledge of the accident causing serious injury to her leg.

"7. Before Deborah was hurt in 1963, I had seen Rowdy buck, kick, and act wild especially when children who were strangers to Rowdy tried to ride her.

"8. Prior to the time when Deborah was injured I have seen Rowdy buck, kick and act wild when children would hit her with a stick or try to make her run.

"9. I never rode the horse because I was afraid of it, and knew it to be dangerous.

"10. The horse was kept in the pasture beside Dr. and Mrs. Ralph Reid's home and that is where I always saw it."

The third affidavit was that of plaintiff's mother, Carolyn H. Jones, who stated that she had no personal knowledge of the accident in which the plaintiff was injured. In addition, she stated:

"4. In September of 1962, late one afternoon, I was in my front yard when my daughter Deborah came running into the yard and said that Sherry Terry had been thrown by Rowdy and had hurt her face and nose. Almost at the same time, I saw the Volkswagen automobile which I knew to be the automobile of Mr. and Mrs. Billy R. Terry being driven by Mr. Billy R. Terry proceeding toward Pineville on Main Street in front of my house. I was close enough to the street to determine that Sherry Terry was sitting in the rear seat of the Volkswagen and that her face was skinned and her nose was bleeding. The Terrys' vehicle proceeded toward the center of Pineville, North Carolina, where Dr. Reid's medical offices are located.

"5. I have never seen my daughter Deborah ride the horse Rowdy. I have seen the horse Rowdy in the pasture located beside Dr. and Mrs. Reid's home. Dr. and Mrs. Reid have never told me or my husband, to my knowledge, that Deborah or Robert could not go on their property or near the horse Rowdy or near the pasture located on Dr. and Mrs. Reid's property as alleged in paragraph 11 of the affidavit filed by Dr. and Mrs. Reid herein."

The fourth affidavit filed by plaintiff in opposition to the motion for summary judgment was that of the plaintiff herself. In this, she related the circumstances of the accident as set forth in the complaint, and then went on to say:

"7. I visited the home of the Terrys often and had ridden the horse Rowdy on other occasions.

"8. Mr. and Mrs. Terry had told me not to ride the horse alone because Rowdy was dangerous.

"9. Approximately one month before March 31, 1963, Robin Terry and I were both riding Rowdy. It was about

4:30 p.m. after school. We were riding the horse bareback and when we started giggling, Rowdy bucked. Mrs. Terry called to us from her window and told us to go over to Dr. and Mrs. Reid's and get their saddle and put it on Rowdy so he wouldn't buck. We got the saddle from Dr. and Mrs. Reid's house, put it on Rowdy and Mrs. Terry then saw us riding the horse with the saddle on.

"10.   I had seen Mr. Terry ride Rowdy before and had seen the horse buck and kick when he was riding the horse.

"11.   An elderly lady who resides at Dr. Reid's home and known to me as Dr. Reid's mother had told me never to go in the pasture where Rowdy was kept because I might get hurt.

"12.   In September, 1962, I was visiting Robin Terry at her home and saw Sherry Terry, age 14, riding Rowdy in Dr. Reid's pasture. Rowdy was running fast and jumped over a log or something and Sherry fell to the ground. Sherry came to her home and her face was skinned and her nose bleeding. Mr. and Mrs. Terry put her in the car and left the home, driving in the direction of Pineville.

"I ran home and told my mother that Sherry had gotten hurt while riding Rowdy.

"13.   I know that Rowdy was spirited and would buck and kick and know that Mr. and Mrs. Terry and their children knew of these characteristics.

"14.   Dr. and Mrs. Reid never told me not to come on their property. Dr. and Mrs. Reid owned a saddle which would fit Rowdy and I have ridden Rowdy while this saddle was on his back. The saddle owned by Dr. and Mrs. Reid was brown.

"15.   I and Robin Terry have fed the horse Rowdy on several occasions. On these occasions, there was a donkey and another horse located in the pasture owned by Dr. Reid. We fed the horse Rowdy from hay which was located and stored in the barn where all of the livestock including Rowdy was kept. This barn was located in the pasture and was owned by Dr. Reid."

The trial judge considered all of the affidavits and ruled that the motion for summary judgment should be denied. An

order was entered accordingly on 12 May 1970. To review this order, defendants applied to this Court for a writ of *certiorari*, which was allowed on 25 June 1970.

*James H. Morton for plaintiff appellee.*

*Helms, Mulliss & Johnston by E. Osborne Ayscue and Robert B. Cordle for defendant appellants.*

PARKER, Judge.

[1]  The motion for summary judgment under Rule 56 of the Rules of Civil Procedure (G.S. 1A-1, Rule 56) is a procedure new to the courts of this State. (For an excellent discussion of the history and purpose of the summary judgment procedure, see opinion by Judge Morris in *Pridgen v. Hughes,* 9 N.C. App. 635, 177 S.E. 2d 425.) The purpose of the rule is not to resolve a disputed material issue of fact, if one exists, but to provide an expeditious method for determining whether any such issue does actually exist. The rule provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Rule 56(c). When motion for summary judgment is made, the court must look at the record in the light most favorable to the party opposing the motion. *Crest Auto Supplies, Inc. v. Ero Manufacturing Company,* 360 F. 2d 896 (7th Cir., 1966). However, when the motion is supported as provided in the rule, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56(e). The affidavits contemplated by the rule, both those supporting and those opposing the motion, "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e).

[2, 3]  In the case before us, plaintiff alleged in her pleading a claim against defendants for injuries received by her from an animal with known vicious propensities. To recover for injuries inflicted by a domestic animal, a claimant must show (1) that

the animal was in fact vicious, and (2) that the owner or keeper knew or should have known of its vicious propensities. The basis of the claim in this event is not negligence, but rather the wrongful keeping of the animal with knowledge of its viciousness. *Swain v. Tillett*, 269 N.C. 46, 152 S.E. 2d 297. Here, plaintiff does not contend that the defendants owned the animal; she alleged it belonged to another. She does assert that defendants were the keepers of the animal. "The keeper is one who, either with or without the owner's permission, undertakes to manage, control, or care for the animal as owners in general are accustomed to do." *Swain v. Tillett, supra.*

[4, 5] Defendants' affidavits disclose they are prepared to offer competent evidence to show that their only connection with the horse in this case was that they permitted its owner, their tenant, to pasture it in their pasture, that they did not at any time "manage, control, or care for the animal as owners in general are accustomed to do," and that the horse was not in fact vicious and defendants neither knew nor had any reason to know of any vicious propensity on its part. These facts, if established, would defeat plaintiff's claim. Defendants' affidavits are, therefore, sufficient to require summary judgment in their favor unless plaintiff is prepared to show that there is a genuine issue as to these facts. To do so, she may not rest upon the mere allegations in her pleading, but her response, by affidavits or otherwise as provided in Rule 56, "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).

[5, 6] Turning to plaintiff's affidavits, we find that some of the statements therein are based on hearsay. These would not be admissible in evidence and should not be considered in passing on the motion for summary judgment. Rule 56(e). Considering such of the facts stated in plaintiff's affidavits as would be admissible in evidence, and construing these in the light most favorable to plaintiff, we find plaintiff has failed to show that she can offer any competent evidence to prove that the defendants were the "keepers" of the animal here involved, within the definition of that word as contained in *Swain v. Tillett, supra.* Furthermore, even if a liberal construction of plaintiff's affidavits show that she can produce some competent evidence from which a jury might permissibly find that the horse here involved was a vicious animal, they completely fail to disclose that she has any competent evidence to show that defendants either knew or had any reasonable cause to know of any such

vicious propensities. Her affidavits, therefore, fail to "set forth specific facts showing that there is a genuine issue for trial."

[7] We note that a liberal construction of the allegations in plaintiff's complaint might support the contention that she has stated a valid claim for relief on the theory that defendants, even though being neither owners nor keepers of the horse, were nevertheless liable for her injuries in that they negligently encouraged plaintiff to ride the horse by allowing her to use saddles and other riding equipment owned by defendants without adult supervision or protection. However, here again, in order to recover on such a theory, it would be necessary for plaintiff to prove that defendants knew or should have known that the animal was in fact vicious. In addition, plaintiff would have to produce evidence that defendants actively encouraged plaintiff to ride. Her affidavits fail to show that she can produce any competent evidence to prove these facts.

Plaintiff having failed to show that there is a genuine issue for trial, defendants' motion for summary judgment in their favor should have been allowed. The judgment denying defendants' motion is

Reversed.

Chief Judge MALLARD and Judge HEDRICK concur.