BOILING SPRING LAKES DIVISION OF REEVES TELECOM COR-
PORATION v. COASTAL SERVICES CORPORATION, NORMAN
PERRY, T/D/B/A NORMAN PERRY CONSTRUCTION COM-
PANY, AND LLOYD R. WILLIAMS

No. 7513DC364

(Filed 15 October 1975)

1. Deeds § 19— construction of restrictive covenants

Restrictive covenants are strictly construed against limitations upon the beneficial use of property, but such construction must be reasonable and not applied in such a way as to defeat the plain and obvious purposes of the restriction, and the surrounding circumstances existing at the time of the creation of the restriction are considered in determining the intention.

**2. Deeds § 20— restrictive covenants — approval of house plans**

A restrictive covenant requiring the approval of house plans is enforceable only if the exercise of the power in a particular case is reasonable and in good faith.

**3. Deeds § 20— restrictive covenant — approval of house plans by developer — unreasonable disapproval**

In an action to enforce a restrictive covenant requiring building plans for homes in a subdivision to be submitted to and approved by the subdivision developer, the developer's disapproval of defendant's plans for construction of a house containing 768 square feet on the ground floor and 469 square feet on the second floor because the town planning board recommended that a minimum of 1000 square feet be required on the ground floor of houses in the subdivision is *held* unreasonable, and the covenant will not be enforced against defendant, where advertising for the subdivision lots was directed to low income groups, purchasers were given the impression they could erect small homes on the lots, and there had been a policy to require that houses have a minimum size of 800 square feet, but some deviations had been allowed for the construction of smaller homes, and there was no evidence that the policy applied only to the ground floor.

APPEAL by plaintiff from *Walton, Judge.* Judgment entered 2 January 1975 in District Court, BRUNSWICK County. Heard in the Court of Appeals 28 August 1975.

The plaintiff seeks to restrain permanently the defendants from erecting a dwelling on the lots of the defendant Williams after plaintiff had refused to approve the house plans, contending that it had authority to do so under an applicable restrictive covenant.

In 1960 plaintiff corporation purchased 14,000 acres of land in Brunswick County, located several miles inland and west of Southport. The tract was wooded with several natural lakes. A creek served as a water source for three large man-made lakes, the largest being Boiling Spring Lakes containing 250 acres and having a shore line of ten miles. Plans were made for development of the tract as a recreational and retirement community. Part of the area was subdivided into almost 10,000 lots on about 100 miles of streets and roads. A golf course, club house and motel were constructed.

Lot sales began in 1962 with a massive advertising campaign using various media in the United States and several foreign countries. The advertising was directed primarily to the lower income groups. Initially lots were sold for $350.00 or two for $650.00, with a down payment of $5.00 and the balance

payable at the rate of $5.00 monthly. Generally, the lots were sold under contract. Delivery of the deed was made after all payments were received under the terms of the contract, usually eight to ten years after the initial down payment. Now about 300 families live in the development. Boiling Spring Lakes became an incorporated municipality several years ago.

An instrument entitled "Public Declaration of Covenants, Restrictions and Conditions," dated 27 January 1963, was filed for registration in 1963 in the office of the Register of Deeds of Brunswick County; and an instrument of the same title, dated 23 August 1971, was recorded, which extended the operative time of the covenants. Both instruments contained substantially similar provisions. Neither contained a provision for the minimum size of dwellings, but both contained the provision that "no building or other structure shall be erected or altered on any lot until the building plans shall have been approved in writing by the developer group." This provision was also included in the "Covenants and Restrictions" portion of the sales contract between plaintiff and the buyers, and the deeds delivered upon final payment incorporated by reference the "Covenants and Restrictions" provisions of the sales contract.

The testimony of Arthur M. Greene, witness for the defendants, tended to show that he worked for plaintiff at the project from 1962 to 21 May 1974, most of the time as general manager, and thereafter until October 1974, as consultant; that he had set a minimum building size policy of 800 square feet of enclosed area, exclusive of porches; and he permitted some minor variations. Though the plaintiff was not engaged in house construction, to induce home building on the project Mr. Greene designed and built a model home in 1966, which was designated "The Hideaway." This model home had an enclosed area of 845.8 square feet with a porch of 103.2 square feet. A brochure picturing the house was mailed to all lot owners to give them some idea of the type and size house they could build on their lots. Mr. Greene testified that he did not try to increase or upgrade the size standards of the houses, because plaintiff had represented that small homes would be acceptable, and many lots had been sold to those who expected to build there years later upon retirement.

The two lots now owned by the defendant Williams were sold by plaintiff in 1963 under a sales contract. After paying the purchase price in installments, the purchaser assigned his

interest to the defendant Williams. The deed for the lots was made by plaintiff to said defendant on 29 August 1974. He then employed defendants Coastal Services Corporation and Norman Perry to prepare the house plan and submit it for approval to the plaintiff and the building inspector for the Town of Boiling Spring Lakes. The plan submitted was for a two-story dwelling containing 768 square feet on the ground floor and 469 square feet on the upper floor. The town granted a building permit, but the plaintiff, through its general manager, George Bayer, refused to approve the house plan for the stated reason that the Planning Board of the Town of Boiling Spring Lakes recommended to the manager that zoning standards in the area be changed to require a minimum of 1,000 square feet of enclosed area on the ground floor.

It appeared from the record that George Bayer had replaced Arthur M. Greene as plaintiff's general manager in June 1974. Soon after assuming his new duties, Bayer consulted with the Planning Board of the Town of Boiling Spring Lakes. At that time the Planning Board was not acting in an official capacity; it had adopted no zoning ordinances, but had made some study and determined that the town should be divided into three residential zones and that in Zone R-2 (in which defendant Williams' lots were located) a minimum size of 1,000 square feet of livable heated space on the ground floor was desirable. The Board recommended to plaintiff's manager that plaintiff adopt that as a standard in the approval of plans for new construction in this zone. In a letter to defendant Williams dated 20 November 1974, Mr. Bayer notified him that plaintiff would not approve his house plan and added: "This office is being guided by the recommendations of the local Planning Board."

In November 1974, the defendants began construction. Plaintiff began this action to restrain such construction. All parties stipulated that Judge Walton hear the case without a jury and render final judgment. From the judgment denying relief sought by plaintiff and dismissing the action, plaintiff appealed.

*Frink, Foy & Gainey by Henry G. Foy for appellant.*

*Ledgett, Gall & Edwards, P.A., by G. Thomas Gall for appellees.*

CLARK, Judge.

The courts hold that restrictive covenants imposed by the original owners or a common vendor of a tract of land in pursuance of a general plan for the development and improvement of the property, are valid and enforceable, provided they are not contrary to law or public policy. Webster, "Real Estate Law in North Carolina," § 344 (1971); 7 Thompson, Real Property, § 3164 (1962).

[1] In North Carolina restrictive covenants are strictly construed against limitations upon the beneficial use of property, but such construction must be reasonable and not applied in such a way as to defeat the plain and obvious purposes of a restriction. In applying the strict but reasonable test of construction, " 'the surrounding circumstances existing at the time of the creation of the restriction are taken into consideration in determining the intention.' " *Long v. Branham,* 271 N.C. 264, 268, 156 S.E. 2d 235, 239 (1967).

Sub judice, for the first time in this Court, we have a restrictive covenant which requires building p'ans to be submitted to and approved by the grantor. Generally, the courts of other states, with the possible exception of Ohio, agree that this restrictive covenant is valid and enforceable, even though the covenant does not in itself impose standards of approval, when applicable to all of the lots in a residential subdivision as part of a uniform plan of development, or when used in connection with some other stated restriction within which approval may operate. See, Annot., 40 A.L.R. 3d 864 (1971).

The exercise of the authority to approve the house plans cannot be arbitrary. There must be some standards. Where these standards are not within the restrictive covenant itself, they must be in other covenants stated or designated, or they must be otherwise clearly established in connection with some general plan or scheme of development. *Vaughan v. Fuller,* 278 Ala. 25, 175 So. 2d 103 (1963); *Rhue v. Cheyenne Homes, Inc.,* 168 Colo. 6, 449 P. 2d 361 (1969); *Levin v. Mountain Farms, Inc.,* 22 Conn. Supp. 14, 158 A. 2d 493 (1959); *Kirkley v. Seipelt,* 212 Md. 127, 128 A. 2d 430 (1957); *Carroll County Dev. Corp. v. Buckworth,* 234 Md. 547, 200 A. 2d 145 (1964); *Parsons v. Duryea,* 261 Mass. 314, 158 N.E. 761 (1927); *West Bloomfield Co. v. Haddock,* 326 Mich. 601, 40 N.W. 2d 738 (1950); *Syrian Antiochian Orthodox Archdiocese v. Palisaides*

---

---

*Associates,* 110 N.J. Super. 34, 264 A. 2d 257 (1970) ; *Plymouth Woods Corp. v. Maxwell,* 407 Pa. 539, 181 A. 2d 321 (1962).

[2]   And it is the general rule that a restrictive covenant requiring approval of house plans is enforceable only if the exercise of the power in a particular case is reasonable and in good faith. Annot., 40 A.L.R. 3d, supra, at 879.        ·

[3]   In applying the test of reasonableness and good faith to the case before us, we must consider the general plan or scheme of development which was established initially and subsequently up to the time that the plans of the defendant Williams submitted his house plans to the plaintiff for approval as required by the restrictive covenant. It is clear that all advertising was directed to the low income groups, and that the· purchasers were given the impression that they could erect small homes. Though there was a policy to require that the houses have a minimum size of 800 square feet, some deviations were allowed for the construction of smaller homes, and there was no evidence that the policy applied only to the ground floor. We conclude that under these circumstances the disapproval of the plans for dwelling of the defendant was not reasonable.

The judgment is

Affirmed.

Judges MORRIS and VAUGHN concur.