RAINTREE HOMEOWNERS ASSOCIATION, INC. v. KARL R. BLEIMANN AND WIFE, RENA BLEIMANN

No. 572PA94

(Filed 3 November 1995)

1. **Deeds § 87 (NCI4th)— restrictive covenant—plan approval by architectural review committee—enforceability**

A restrictive covenant making an architectural review committee the sole arbiter of plans for any construction in a subdivision and providing that the committee can withhold approval for any reason, including purely aesthetic ones, is enforceable according to its terms, at least in the absence of evidence that the committee acted arbitrarily or in bad faith in the exercise of its powers.

**Am Jur 2d, Covenants, Conditions and Restrictions § 233.**

2. **Deeds § 87 (NCI4th)— architectural review committee— denial of use of vinyl siding—failure to show bad faith**

The evidence was insufficient to show that the architectural review committee of plaintiff homeowners association acted arbi-

trarily or in bad faith when reviewing and denying defendants' request for approval of plans to replace wood clapboard siding on their home with vinyl siding, and the trial court should have directed a verdict for plaintiff in its action to enjoin defendants from placing vinyl siding on their home and to require defendants to restore their home to its original condition, where defendants presented evidence tending to show only that the vinyl siding looked like wood, was of a good quality, and was not objected to by neighbors; the uncontradicted evidence showed that the committee on three occasions considered defendants' application for vinyl siding despite the fact it had previously found the materials unacceptable, that members of the committee visited defendants' home and looked at the vinyl siding before making a decision, that the committee conducted a study and found that vinyl siding was not appropriate for the subdivision, and that previous applications had been rejected for that reason; and the evidence showed that the committee consistently found that vinyl siding was not appropriate for the subdivision because the general theme of the community was a natural, contemporary style, whereas vinyl siding conveyed a colonial or traditional style.

**Am Jur 2d, Covenants, Conditions and Restrictions § 233.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 116 N.C. App. 561, 449 S.E.2d 13 (1994), finding no error in a trial that resulted in a judgment for the defendants entered by Webb, J., on 31 March 1993 in Superior Court, Mecklenburg County. Heard in the Supreme Court 15 September 1995.

*Weaver, Bennett & Bland, P.A., by John R. Lynch, Jr., and Michael David Bland, for plaintiff-appellant.*

*Donald S. Gillespie, Jr., for defendant-appellees.*

FRYE, Justice.

Plaintiff, Raintree Homeowners Association, Inc. (Raintree), makes four arguments on this appeal. In its first argument, plaintiff contends that the trial court erred in denying its motion for directed verdict and motion for judgment notwithstanding the verdict. We agree and hold that defendants' evidence was insufficient as a matter of law to take the case to the jury.·

**RAINTREE HOMEOWNERS ASSN. v. BLEIMANN**

[342 N.C. 159 (1995)]

The following facts were undisputed at trial:

Defendants Karl R. Bleimann and Rena Bleimann own a home within North Raintree, a section of a planned unit development known as Raintree. The property is subject to recorded covenants. Plaintiff Raintree owns property within Raintree and has the authority and duty to enforce, through its Architectural Review Committee (ARC), the terms of those covenants.

On or about 23 March 1990, defendants began to replace wood clapboard siding on their home with vinyl siding. On 26 March 1990, the Chairman of the ARC advised defendants to stop the installation because it had to be approved by the ARC pursuant to the Declaration of Covenants, Conditions and Restrictions (Declaration) signed by defendants when they purchased their home. These covenants require prior written approval by the ARC of the location, plans and specifications of alterations to any building within Raintree and, in order "to provide architectural value to the subdivision," require that, before any structural changes are made, a "site plan, final plans and specifications" must be submitted to and approved in writing by the ARC "as to harmony of exterior design and general quality with the existing standards of the neighborhood and as to location in relation to surrounding structures and topography."

On 26 March 1990, after being reminded of the requirements in the Declaration for approval of the construction on their home, defendants applied to the ARC for approval. Defendants attended an ARC meeting on the same evening and presented evidence in support of their application. The ARC denied defendants' application. Defendants sent a letter requesting that the ARC reconsider their application. The ARC discussed the application again at its meeting on 23 April 1990 and unanimously reaffirmed its prior decision. Defendants attended another ARC meeting on 21 May 1990 and again presented evidence in support of their application and suggested a compromise by which their home would be deemed a "test case" for vinyl siding. The ARC again denied the application.

While their requests for approval were being considered, defendants continued to install vinyl siding on their home. After the ARC's final determination to deny the application, plaintiff sued defendants seeking to enjoin them from placing the vinyl siding on their home and seeking to require them to permanently remove the vinyl siding and restore the house to its original condition. Defendants answered, praying that, among other things, plaintiff's prayers for relief be

denied and that defendants be permitted to finish installing the vinyl siding.

At trial, plaintiff's motion for summary judgment was denied, and the case was tried before a jury. The issue presented to the jury was whether plaintiff, through its ARC, acted reasonably and in good faith when it denied defendants' application for approval of installation of vinyl siding on defendants' home.

Plaintiff presented evidence that the ARC had made an extensive study of the use of vinyl siding in the subdivision because of a prior application. As a result of this study, the ARC concluded that vinyl siding was not appropriate because the area was "California Contemporary," a rustic style conveyed with houses made of either wood siding or stone. Vinyl siding was different in texture and would neither blend as well with the woody surroundings of North Raintree nor age in the same manner as the wood siding. The ARC concluded that houses with vinyl siding would stay shiny and would stand out, while wood siding would age and blend better with the foliage in the neighborhood. Members of the ARC also visited defendants' house before determining that the vinyl siding was not harmonious with the rest of the neighborhood.

Defendants' evidence consisted of photographs of the house before and after the vinyl siding was installed. They also presented the testimony of several neighbors who stated that the vinyl siding looked just like the wood siding and that they were not unhappy with defendants' house. The contractor also testified that because of defendants' desire to have vinyl siding that closely resembled wood siding, he installed a high-quality siding.

After the close of the evidence, the trial court denied plaintiff's motion for directed verdict. The jury found that plaintiff had not acted reasonably and in good faith when it denied the application. Thereafter, plaintiff moved for judgment notwithstanding the verdict or for a new trial. The trial court denied both motions. Based on the jury's verdict, the trial court entered judgment on 31 March 1993 (1) denying plaintiff's requests for injunctive relief and for an order directing defendants to remove the vinyl siding and restore the home to its original condition, and (2) enjoining plaintiff from preventing defendants from completing the installation of vinyl siding on their home. On appeal, a unanimous panel of the Court of Appeals found no error in the trial. We granted plaintiff's petition for discretionary review, and we now reverse the decision of the Court of Appeals.

**[1]** In *Boiling Spring Lakes v. Coastal Services Corp.*, 27 N.C. App. 191, 218 S.E.2d 476 (1975), our Court of Appeals held that restrictive covenants that grant broad discretionary power to architectural review committees to approve all construction in subdivisions are enforceable. With regard to the exercise of the power of the architectural review committees, that court stated:

> The exercise of the authority to approve the house plans cannot be arbitrary. . . . [A] restrictive covenant requiring approval of house plans is enforceable only if the exercise of the power in a particular case is reasonable and in good faith.

*Id.* at 195-96, 218 S.E.2d at 478-79 (1975); *accord Christopher Properties, Inc. v. Postell*, 106 N.C. App. 180, 415 S.E.2d 786 (1992); *Smith v. Butler Mountain Estates Property Owners Association*, 90 N.C. App. 40, 367 S.E.2d 401 (1988), *aff'd*, 324 N.C. 80, 375 S.E.2d 905 (1989); *Black Horse Run Property Owners Association, Inc. v. Kaleel*, 88 N.C. App. 83, 362 S.E.2d 619 (1987), *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988). It appears that most jurisdictions that have dealt with this issue have found that these covenants are enforceable as long as the determining body makes the decision reasonably and in good faith. *See* John Perovich, Annotation, *Validity and Construction of Restrictive Covenants Requiring Consent to the Construction on Lot*, 40 A.L.R.3d 864 (1971 & Supp. 1995).

In the instant case, the covenant states:

> No construction, reconstruction, remodeling, alteration or addition to any structure, building or fence, wall, road, drive, path or improvement of any nature shall be constructed without obtaining prior written approval of the Committee as to location, plan and specification. . . . The [ARC] shall be the sole arbiter of such plans and may withhold approval for any reason including purely aesthetic considerations.

Both parties agree that the restrictive covenant contained in defendants' deed is enforceable according to the decisions of the Court of Appeals. We agree that the above restrictive covenant is legally enforceable. The covenant specifically provides that the ARC is the sole arbiter of the plans and that the ARC can withhold approval for any reason, including purely aesthetic ones. There is no evidence or contention that the covenant was not entered into knowingly and voluntarily. Therefore, the covenant is enforceable according to its terms, at least in the absence of any evidence that the ARC acted arbi-

trarily or in bad faith in the exercise of its powers. Plaintiff contends that no such evidence was presented and judgment in its favor was appropriate notwithstanding the jury verdict to the contrary. We agree.

A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974). Accordingly, if the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should be granted. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977). In considering any motion for directed verdict, the trial court must view all the evidence that supports the nonmovant's claim as being true, and that evidence must be considered in the light most favorable to the nonmovant, giving to the nonmovant the benefit of every reasonable inference that may legitimately be drawn from the evidence, with contradictions, conflicts and inconsistencies being resolved in the nonmovant's favor. *Farmer v. Chaney*, 292 N.C. 451, 233 S.E.2d 582 (1977).

[2] In the instant case, viewing the evidence in the light most favorable to the nonmoving party, defendants' evidence shows that the vinyl siding closely resembled wood siding and that defendants' neighbors thought the vinyl siding looked attractive. Defendants, however, produced no evidence that the ARC acted arbitrarily or in bad faith when reviewing defendants' application or when making its decision.

Defendants argued and the Court of Appeals concluded that the fact that plaintiff had previously rejected prior applications for vinyl siding suggested that the ARC was unreasonable and acted in bad faith because it did not have an "open mind" when reviewing defendants' application. We disagree with this conclusion. Plaintiff's reliance on past practices and policies does not suggest that the ARC was being unreasonable or arbitrary. The evidence simply shows, even when examined in the light most favorable to defendants, that the ARC had previously evaluated the use of vinyl siding and found that it was not harmonious with the subdivision. Reliance on this past finding was not an example of bad faith. Defendants' evidence, presented through photographs and testimony, showed that the vinyl siding looked like wood, was of a good quality and was not objected to by neighbors. This evidence is not sufficient to show that plaintiff acted arbitrarily or in bad faith.

Instead, the uncontradicted evidence shows that the ARC on three occasions considered defendants' application for vinyl siding despite the fact that it had previously found the material unacceptable, that the members of the ARC visited defendants' house and looked at the vinyl siding before making a decision, that the ARC conducted a study and found that vinyl siding was not appropriate for North Raintree, and that previous applications had been rejected for that reason. The evidence also showed that the ARC consistently found that vinyl siding was not appropriate for this section of Raintree because the general theme of the community was a natural, contemporary style, whereas vinyl siding conveyed a colonial or traditional style.

Because no evidence was presented that plaintiff acted arbitrarily or in bad faith when making the decision to reject defendants' application for vinyl siding, the evidence was insufficient as a matter of law to raise a question of fact requiring submission to the jury. Directed verdict for the plaintiff would have been proper and, therefore, the trial judge erred in not granting plaintiff's motion for judgment notwithstanding the verdict.

By its second argument, plaintiff contends that the jury was improperly instructed. Having concluded that the evidence was insufficient to take the case to the jury, we find it unnecessary to determine this issue. We also find it unnecessary to address plaintiff's third and fourth arguments, which relate to the admissibility of certain evidence.

The decision of the Court of Appeals is reversed, and this case is remanded to that court with instructions that the case be remanded to the trial court for entry of judgment consistent with this opinion.

REVERSED AND REMANDED.