CECIL C. HOLCOMB, Plaintiff v. COLONIAL ASSOCIATES, L.L.C., and JOHN OLSON, Defendants

No. COA01-1067

(Filed 15 October 2002)

**Animals— dog attack—liability of rental property owner**

The trial court erred by denying defendant-Colonial's motion for a directed verdict where Colonial owned land and rental buildings rented to defendant Olson, who owned two dogs; the dogs attacked plaintiff; and Colonial was not the owner or keeper of the dogs. The evidence showed at most that Colonial allowed Olson to have dogs on the property and was aware of prior inci-

dents of the dogs, but alleging that Colonial was an owner or keeper of the dogs was an essential part of plaintiff's prima facie case.

Judge WALKER dissenting.

Appeal by defendant from judgment entered 4 October 2000 and order entered 12 February 2001 by Judge James C. Spencer, Jr. in Wake County Superior Court. Heard in the Court of Appeals 15 August 2002.

*Waller & Stroud, LLP, by W. Randall Stroud, for plaintiff-appellee.*

*Bailey & Dixon, L.L.P., by Gary S. Parsons and Warren T. Savage, for defendant-appellant Colonial Associates, L.L.C.*

EAGLES, Chief Judge.

Colonial Associates, L.L.C. ("Colonial), defendant, appeals from judgment entered on a jury verdict finding Colonial negligent for personal injury to Cecil Holcomb ("Holcomb"), plaintiff, caused by a tenant's two Rottweiler dogs. Colonial also appeals from an order denying its motion for judgment notwithstanding the verdict and a new trial. After careful consideration of the briefs and record, we reverse and remand.

Colonial owned 13 acres of land on Nelson Road in Wake County. The two houses were approximately 100 yards apart. Colonial hired Management Associates to manage these two houses which were used as rental property. John Olson ("Olson") leased one of the homes and John Feild ("Feild") leased the other home on the property.

At trial, the evidence tended to show the following. In 1994, a Rottweiler dog owned by Olson lunged, with its teeth showing, at Feild while Feild was in his own driveway. The dog struck a machete held by Feild and then turned and ran. After the incident, Feild told Olson and a representative of Management Associates about the encounter. Also, sometime between February 1994 and April 1996, one of Olson's dogs bit an employee of Feild's partner while the employee was loading scaffolding at Feild's house.

In April 1996, Parker Lincoln Developers hired Holcomb to provide an estimate for removal of the two houses located on Colonial's

## HOLCOMB v. COLONIAL ASSOCS., L.L.C.

[153 N.C. App. 413 (2002)]

property at Nelson Road. On 18 April 1996, Holcomb went to the property. Holcomb did not contact Colonial, Management Associates, or Olson before going on the property. Holcomb initially went to the first house on the property. Holcomb pulled into the driveway and knocked on the front door. After no one answered, Holcomb looked around the house to see if it had any storage buildings, patios, decks, or concrete driveways. After making notes, Holcomb got back into his truck and proceeded to Olson's house. Holcomb went to the front door, rang the doorbell and knocked. He observed a note that stated "[b]eware, mean dog or large dog inside." No one answered the door so Holcomb began to walk around outside the house. As Holcomb was walking down the side of the house, he observed a storage building with a small chain link fence enclosure in the back yard. There was one Rottweiler dog behind the fence. Holcomb continued to the back corner of the house where he saw a deck. Under the deck, Holcomb saw two other Rottweiler dogs. The two dogs got up and came towards Holcomb. While making his way back to the front of the house, Holcomb continued to knock the two dogs back with his clipboard as they lunged at him. After approximately twenty minutes, Holcomb reached the front of the house. As Holcomb took a step backwards onto the driveway, one dog lunged, hit Holcomb, and knocked him down. Holcomb broke his arm and injured his back when he fell. He remained still on the ground for approximately five minutes while the two dogs stood over him. When the dogs started to walk away, Holcomb moved slowly towards his truck. The dogs then came back towards Holcomb. As he opened the door to his truck, Holcomb had to "beat" the dogs to keep them out. Holcomb shut the truck door, rested, and proceeded to the hospital.

Holcomb commenced this action on 26 May 1998 asserting a strict liability claim against Olson and negligence claims against Olson and Colonial. The matter was tried at the 18 September 2000 Civil Session of Wake County Superior Court before Judge James C. Spencer, Jr. The jury returned a verdict finding that: (1) Holcomb was a lawful visitor at the time and place of his injury; (2) Holcomb was injured by the negligence of Olson; (3) Holcomb was injured by the negligence of Management Associates; and (4) Management Associates was the agent for Colonial at the time of Holcomb's injury. The jury awarded Holcomb $330,000.00 for his personal injuries. The trial court ordered that Olson and Colonial were jointly and severally liable. On 12 February 2001, the trial court denied Colonial's motion for judgment notwithstanding the verdict and a new trial. Colonial appeals.

On appeal, Colonial contends that the trial court: (1) erred in denying Colonial's motions for directed verdict, judgment notwithstanding the verdict, and a new trial; (2) erred in instructing the jury regarding Colonial's duty and Management Associates' status as an independent contractor; and (3) abused its discretion by allowing Holcomb's testimony regarding lost income and earnings based on documents and information not provided to Colonial until the week before the trial. After careful consideration, we reverse.

Colonial first contends that the trial court erred in denying Colonial's motions for directed verdict, judgment notwithstanding the verdict, and a new trial. Colonial argues that in order for a party to be liable for injuries caused by domestic animal, the animal must be dangerous or vicious and the party must be the owner or keeper of the animal and knew or should have known about the animal's dangerous propensities. *See Swain v. Tillett*, 269 N.C. 46, 51, 152 S.E.2d 297, 301 (1967). Colonial contends that it is not liable because Colonial was neither the owner nor keeper of the dogs that caused Holcomb's injuries. After careful review, we agree.

"A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury." *Gregory v. Kilbride*, 150 N.C. App. 601, 609, 565 S.E.2d 685, 691 (2002). "[A] defendant is not entitled to a directed verdict unless the court, after viewing the evidence in a light most favorable to the plaintiff, determines the plaintiff has failed to establish a *prima facie* case or right to relief." *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 84, 557 S.E.2d 176, 179 (2001), *disc. review denied*, 355 N.C. 283, 560 S.E.2d 795 (2002). "The trial court should deny a motion for directed verdict when it finds any evidence more than a scintilla to support plaintiff's prima facie case." *Swinson v. Lejeune Motor Co.*, 147 N.C. App. 610, 611, 557 S.E.2d 112, 114 (2001).

"A motion for judgment notwithstanding the verdict represents a renewal, after a verdict is issued, of a motion for directed verdict, and the standards of review for both motions are the same." *Crist v. Crist*, 145 N.C. App. 418, 422, 550 S.E.2d 260, 264 (2001). "The test for determining whether a motion for directed verdict is supported by the evidence is identical to that applied when ruling on a motion for judgment notwithstanding the verdict." *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002). "Judgment notwithstanding the verdict is properly granted if all the evidence supporting plaintiffs' claim, taken as true and considered in the light most favorable to plaintiffs, was not sufficient as a matter of

law to support a verdict for the plaintiffs." *Cap Care Grp., Inc. v. McDonald*, 149 N.C. App. 817, 821-22, 561 S.E.2d 578, 581 (2002). "[I]f the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should be granted." *Raintree Homeowners Assn. v. Bleimann*, 342 N.C. 159, 164, 463 S.E.2d 72, 75 (1995).

"To recover for injuries inflicted by a domestic animal, a claimant must show (1) that the animal was in fact vicious, and (2) that the owner or keeper knew or should have known of its vicious propensities." *Patterson v. Reid*, 10 N.C. App. 22, 28-29, 178 S.E.2d 1, 5 (1970); *see also Swain*, 269 N.C. at 51, 152 S.E.2d at 301. " 'The gravamen of the cause of action in this event is not negligence, but rather the wrongful keeping of the animal with knowledge of its viciousness; and thus both viciousness and scienter are indispensible elements to be averred and proved.' " *Swain*, 269 N.C. at 51, 152 S.E.2d at 301 (quoting *Barber v. Hochstrasser*, 136 N.J.L. 76, 79, 54 A.2d 458, 460 (1947)). "The owner of an animal is the person to whom it belongs. The keeper is one who, either with or without the owner's permission, undertakes to manage, control, or care for the animal as owners in general are accustomed to do." *Swain*, 269 N.C. at 51, 152 S.E.2d at 302.

In *Joslyn v. Blanchard*, 149 N.C. App. 625, 561 S.E.2d 534 (2002), this Court recently decided a similar case. There, the plaintiff, a minor child, was bitten by a dog belonging to tenants on the defendant's property. *Id.* at 626, 561 S.E.2d at 535. "The complaint alleged negligence on defendants' part in that they 'were aware of the violent nature of [the tenant's] dog . . .' but nevertheless allowed the [tenants] to keep the dog on the property." *Id.* The trial court granted summary judgment for the defendant property owner. *Id.* at 626-27, 561 S.E.2d at 535. This Court affirmed summary judgment for the defendant property owner. *Id.* at 630, 561 S.E.2d at 537.

*Josyln* reaffirmed the general rule that:

> In order to recover at common law for injuries inflicted by a domestic animal, a plaintiff must show both "(1) that the animal was dangerous, vicious, mischievous, or ferocious, or one termed in law as possessing a vicious propensity; and (2) that the owner or keeper knew or should have known of the animal's vicious propensity, character, and habits."

*Id.* at 628-29, 561 S.E.2d at 536 (quoting *Sellers v. Morris*, 233 N.C. 560, 561, 64 S.E.2d 662, 663 (1951)). The "[p]laintiff's complaint and

supporting affidavits contain[ed] no allegations whatsoever to support any connection between defendants and the dog, beyond the fact that they permitted the [tenants] to keep the dog on the property." *Id.* at 630, 561 S.E.2d at 537. This Court went on to state that the "plaintiff has failed to prove that defendants were the 'keepers' of the animal here involved, as defined by our Supreme Court in *Swain.*" *Id.*

Here, the evidence is undisputed that: Colonial owned the land and the rental dwellings on the property; that Olson rented one of the dwellings; and that Olson owned the two dogs. Plaintiff presented no evidence to support the inference that Colonial was either an owner or keeper of the two dogs. At most, plaintiff's evidence showed that Colonial allowed Olson to have a dog at the property and that Management Associates was aware of prior incidents with Olson's dogs. However, plaintiff has failed to establish an essential element of his prima facie case, i.e., that Colonial was an *owner* or *keeper* of the two dogs. Accordingly, the trial court erred in denying Colonial's motion for directed verdict at the close of plaintiff's evidence and in denying Colonial's motion for judgment notwithstanding the verdict after the trial.

Because we have reversed for failure to direct a verdict or judgment notwithstanding the verdict for the defendant, we need not address Colonial's remaining assignments of error. Accordingly, the decision of the trial court is reversed and the matter is remanded to the trial court for entry of an order consistent with this opinion.

Reversed and remanded.

Judge BIGGS concurs.

Judge WALKER dissents.

WALKER, Judge, dissenting.

I respectfully dissent from the majority opinion which reverses for failure to direct a verdict or judgment notwithstanding the verdict for the defendant on the grounds that plaintiff presented insufficient evidence to establish his *prima facie* case of negligence for personal injury against Colonial Associates, L.L.C. (Colonial).

This Court recently reaffirmed the general rule that:

In order to recover at common law for injuries inflicted by a domestic animal, a plaintiff must show both "(1) that the animal

was dangerous, vicious, mischievous, or ferocious, or one termed in law as possessing a vicious propensity; and (2) that the owner or keeper knew or should have known of the animal's vicious propensity, character, and habits."

*Joslyn v. Blanchard*, 149 N.C. App. 625, 628-29, 561 S.E.2d 534, 536 (2002) (*quoting Sellers v. Morris*, 233 N.C. 560, 561, 64 S.E.2d 662, 663 (1951)).

Inherent in this common law rule is the requirement that the plaintiff present evidence to support the inference that the landlord is either an owner or a keeper of the animal that caused the injury. Our Supreme Court has defined "keeper" as "one who, either with or without the owner's permission, undertakes to manage, *control*, or care for the animal as owners in general are accustomed to do." *Swain v. Tillet*, 269 N.C. 46, 51, 152 S.E.2d 297, 302 (1967) (emphasis added). Although the Court did not define "control," a common definition of "control" is "[t]o exercise authoritative or dominating influence over; direct." *The American Heritage College Dictionary* 303 (3d ed. 1997).

By virtue of the landlord-tenant relationship, a landlord has control over the premises and the tenant's conduct on the premises. Lease provisions define the extent of the landlord's control by either permitting or prohibiting certain conduct by the tenant.

In this case, the lease, executed on behalf of Colonial by its agent, Management Associates (Management), contained the following provision:

The tenant may keep as a pet the following: one Rottweiler dog. . . . The tenant shall remove any pet previously permitted under this paragraph within forty-eight hours of written notification from the landlord that the pet, in the landlord's sole judgment, creates a nuisance or disturbance or is, in the landlord's opinion, undesirable.

This provision evidences Colonial's ultimate authority over the tenant's dogs on the premises, thereby demonstrating Colonial's ability to control.

The majority relies in part on *Joslyn, supra*, where this Court affirmed summary judgment for defendants because the plaintiff failed to present any evidence that defendants were keepers. *Joslyn*, 149 N.C. App. at 630, 561 S.E.2d at 537. In *Joslyn*, the plaintiff's

complaint and affidavits made "no allegations whatsoever to support any connection between defendants and the dog, beyond the fact that they permitted the [tenants] to keep the dog on the property." *Id.*

In contrast, here, the plaintiff's complaint alleged that Colonial "failed to address a dangerous condition and require their tenant, Defendant Olson, to adequately restrain and control his vicious animals." Further testimony revealed that Colonial instructed Management to order the tenant to remove the dogs after this incident and, thus, maintained ultimate responsibility for the conduct on the premises. Unlike *Joslyn*, these facts demonstrate a connection between Colonial and the dogs and, when viewed in the light most favorable to the plaintiff, tend to support an inference that Colonial is a keeper by virtue of its control evident in the lease.

In addition to demonstrating the landlord's keeper status, an injured plaintiff must establish the landlord's knowledge of the animal's vicious propensities to recover under the common law rule. In an agency relationship, a principle is chargeable with and bound by the knowledge held by his agent with respect to matters within the scope of the agency, even if the agent does not inform the principle of such knowledge. *Norburn v. Mackie*, 262 N.C. 16, 24, 136 S.E.2d 279, 285 (1964); *Reinninger v. Prestige Fabricators, Inc.*, 136 N.C. App. 255, 261-62, 523 S.E.2d 720, 725 (1999). Here, plaintiff argued and the jury found that Management was Colonial's agent. Further, as the majority points out, the evidence showed a Rottweiler dog, owned by defendant Olson, exhibited vicious propensities toward Mr. Feild, a neighbor, in 1994. Management learned of this previous incident prior to the attack on the plaintiff. Management's knowledge of the previous incident is imputed to Colonial under the principles of agency. *Swain*, 269 N.C. at 53-54, 152 S.E.2d at 303. Thus, plaintiff presented sufficient evidence on the issue of Colonial's knowledge of the dog's vicious propensities to overcome a motion for directed verdict.

However, I believe the able trial judge erred in submitting issue three as to the negligence of Management. Because plaintiff presented sufficient evidence on the *prima facie* elements of his case against Colonial, I would award plaintiff a new trial in which the jury should be instructed on whether Colonial was a keeper by virtue of its control of the premises through the lease and whether Colonial was negligent by reason of being charged with knowledge of the vicious propensities of defendant Olson's Rottweiler as imputed by

its agency relationship with Management. I would affirm that portion of the judgment in which the jury found plaintiff to be a lawful visitor at the time and place of the injury.