SHERRY LEE, Plaintiff v. EARL RICE and MARTHA RICE, CYNTHIA MEADOWS and MICHAEL LANDIS a/k/a BOBBY LANDIS, Defendants

No. COA01-1506

(Filed 3 December 2002)

**Animals— domestic—pit bull dog—wrongful keeping of animal with knowledge of viciousness**

The trial court erred in a wrongful keeping of animal with knowledge of viciousness case by denying defendants' motion for directed verdict at the close of plaintiff's evidence and in denying defendants' motion for judgment notwithstanding the verdict after a trial finding defendants liable for injuries inflicted upon plaintiff by a pit bull dog, because: (1) plaintiffs presented insufficient evidence that defendants owned or were the keepers of the pit bull that injured plaintiff and her dog; (2) at best, plaintiff's

evidence tended to show that defendants allowed their son to keep the dog on property owned by them despite the fact that they were aware of previous incidents involving the dog; and (3) defendants, as landlords, were not required to remove the animals from their property.

Appeal by defendants from judgment entered 25 April 2001 and order entered 19 July 2001 by Judge Zoro J. Guice, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 12 September 2002.

*Cogburn, Goosmann, Brazil & Rose, P.A., by Patricia L. Arcuri, for plaintiff appellee.*

*Frank J. Contrivo, P.A., by Andrew J. Santaniello, for defendant appellants.*

TIMMONS-GOODSON, Judge.

Earl Rice ("Rice") and his wife, Martha Rice (collectively, "defendants"), appeal from judgment entered upon a jury verdict finding them liable for injuries inflicted upon Sherry Lee ("plaintiff") by a pit bull dog. Defendants also appeal an order of the trial court denying their motions for a new trial and for judgment notwithstanding the verdict. For the reasons set forth herein, we vacate the judgment of the trial court.

On 28 January 2000, plaintiff filed a complaint in Buncombe County Superior Court, alleging that a pit bull dog known as "Blockhead" had attacked plaintiff and her dog on plaintiff's property. The complaint averred that defendants were the owners or keepers of the pit bull, and that the dog exhibited vicious propensities which were known to defendants. The complaint further alleged that Blockhead was a dangerous dog as defined by the North Carolina General Statutes, and that defendants failed to take adequate steps to ensure plaintiff's safety. On 6 June 2000, plaintiff amended her complaint to include as defendants Rice's adult son, Michael Landis ("Landis") and his girlfriend, Cynthia Meadows ("Meadows"). According to the amended complaint, the pit bull belonged to Meadows and Landis, who lived in a house owned by defendants. As neither Landis nor Meadows ever responded to the complaint in any manner, default judgment was entered against them.

Plaintiff's case came before a jury on 17 and 18 April 2001, at which time the following evidence was presented: Rice testified that

he and his wife Martha lived at 16 Mildred Avenue in Asheville, North Carolina. They also owned the adjacent house and property located at 20 Mildred Avenue, where Landis lived with his girlfriend, Meadows. A single fence enclosed both properties. Landis and Meadows owned three dogs, including Blockhead. The dogs were normally kept inside a smaller kennel located on the side of the property occupied by Landis and Meadows, but they occasionally ran freely within the larger fenced area. Rice testified that he was aware that Blockhead had escaped from the property on several occasions, and that the dog had been involved in several altercations with other dogs in the neighborhood. Although Rice told his son that "he needed to get rid of the dogs," Landis disregarded this advice. Defendant Martha Rice gave similar testimony.

Plaintiff testified that she lived at 31 Mildred Avenue in Asheville, and that she owned a mixed breed dog named "Shorty." On 10 October 1999, plaintiff was in her backyard when she "heard what sounded like a car wreck" in her front yard. Plaintiff ran to the front of her yard, where she "saw this man on top of this huge dog, and [the dog] had Shorty by the throat." Plaintiff identified Blockhead as the attacking dog. Plaintiff then "grabbed a stick and . . . just started hitting the dog." As plaintiff attempted to rescue her dog, Blockhead bit her ankle and hand, resulting in the eventual amputation of the tip of her finger. Responding officers from the police and fire departments managed to release Shorty from Blockhead's grip. As a result of the attack, Shorty sustained serious injuries requiring intensive veterinary treatment, including surgery. Plaintiff testified that, because of this incident, she was now "deathly afraid of dogs[.]" Upon the close of plaintiff's evidence, defendants moved for a directed verdict, which the trial court denied.

Upon considering the evidence, the jury found that plaintiff had been injured by a vicious animal wrongfully kept by defendants, and that plaintiff was entitled to recovery for personal injuries in the amount of five thousand dollars. The trial court entered judgment against defendants accordingly on 25 April 2001. Defendants thereafter filed motions for a new trial and, alternatively, for judgment notwithstanding the verdict. By order entered 19 July 2001, the trial court denied defendants' motions. Defendants now appeal from the judgment and order of the trial court.

The dispositive issue on appeal is whether plaintiff's evidence was insufficient as a matter of law to support the jury's verdict. Under

Rule 50 of the North Carolina Rules of Civil Procedure, a party may move for a directed verdict and for judgment notwithstanding the verdict in a jury trial. *See* N.C. Gen. Stat. § 1A-1, Rule 50 (2001). A motion for a directed verdict tests the legal sufficiency of the evidence. *See Holcomb v. Colonial Associates*, 153 N.C. App. 413, 416, 570 S.E.2d 248, 250 (2002). In considering a motion for directed verdict, the trial court must view the evidence in the light most favorable to the non-movant. *See Williams v. Tysinger*, 328 N.C. 55, 58, 399 S.E.2d 108, 110 (1991). A motion for directed verdict is properly granted where, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. *See Sibbett v. Livestock, Inc.*, 37 N.C. App. 704, 706, 247 S.E.2d 2, 4, *disc. review denied*, 295 N.C. 735, 248 S.E.2d 864 (1978).

A plaintiff seeking to recover for injuries inflicted by a domestic animal must show "(1) that the animal was dangerous, vicious, mischievous, or ferocious, or one termed in law as possessing a vicious propensity; and (2) that the owner or keeper knew or should have known of the animal's vicious propensity, character, and habits." *Sellers v. Morris*, 233 N.C. 560, 561, 64 S.E.2d 662, 663 (1951). In such cases, " '[t]he gravamen of the cause of action . . . is not negligence, but rather the wrongful keeping of the animal with knowledge of its viciousness[.]' " *Swain v. Tillett*, 269 N.C. 46, 51, 152 S.E.2d 297, 301 (1967) (quoting *Barber v. Hochstrasser*, 136 N.J.L. 76, 79, 54 A.2d 458, 460 (1947)). Thus, liability for injuries inflicted by animals does not depend upon the ownership of the animal, " 'but the keeping and harboring of an animal, knowing it to be vicious.' " *Id.* at 52, 152 S.E.2d at 302 (quoting *Hunt v. Hazen*, 197 Ore. 637, 639, 254 P.2d 210, 211 (1953)).

The owner of an animal is the person to whom it belongs. *See id.* at 51, 152 S.E.2d at 302. A keeper is "one who, either with or without the owner's permission, undertakes to manage, control, or care for the animal as owners in general are accustomed to do." *Id.*

"The word 'keep' as applied to animals, has a peculiar signification. It means 'to tend; to feed; to pasture; to board; to maintain; to supply with necessaries of life.' " *To keep* implies "the exercise of a substantial number of the incidents of ownership by one who, though not the owner, assumes to act in his stead."

*Id.* at 51, 152 S.E.2d at 302 (citations omitted) (quoting *Allen v. Ham*, 63 Me. 532, 536 (1874) and *Raymond v. Bujold*, 89 N.H. 380, 382, 199

A. 91, 92 (1938), respectively). Nothing else appearing, the keeper of a vicious animal is liable for injuries inflicted by it upon another. *See id.* at 52, 152 S.E.2d at 302.

Section 67-4.4 of our General Statutes moreover provides that "[t]he owner of a dangerous dog shall be strictly liable in civil damages for any injuries or property damage the dog inflicts upon a person, his property, or another animal." N.C. Gen. Stat. § 67-4.4 (2001). Under section 67-4.1, an owner is defined as "any person or legal entity that has a possessory property right in a dog." N.C. Gen. Stat. § 67-4.1(a)(3) (2001).

We have recently addressed the liability of landowners for injuries inflicted by dogs owned by tenants. In *Joslyn v. Blanchard*, 149 N.C. App. 625, 561 S.E.2d 534 (2002), and again in *Holcomb v. Colonial Associates*, 153 N.C. App. 413, 417, 570 S.E.2d 248, 251 (2002), this Court reaffirmed the general principle that, in order to recover for injuries inflicted by a domestic animal under the vicious propensity rule, a plaintiff must demonstrate that the defendant was either the owner or the keeper of the vicious animal. *See Joslyn*, 149 N.C. App. at 630, 561 S.E.2d at 537 (affirming summary judgment for the defendant property owner where the plaintiff presented no evidence that the defendant was a keeper of the dog that injured plaintiff); *Holcomb*, 153 N.C. App. at 418, 570 S.E.2d at 251 (reversing the jury verdict against the defendant property owners because there was no evidence to suggest that the defendants "kept" the Rottweiler dogs that attacked the plaintiff).

In the instant case, plaintiff presented insufficient evidence that defendants owned or were the keepers of the pit bull that injured plaintiff and her dog. The uncontroverted evidence in this case was that defendants Landis and Meadows owned Blockhead and generally kept him in a fenced kennel located on one side of their house. Landis and Meadows erected the fenced kennel in order to keep their dogs out of defendants' yard. Rice testified that neither he nor his wife had ever fed, watered, walked, or cared for Blockhead in any manner. Plaintiff presented no evidence tending to show that defendants contributed, either personally or financially, to the dog's care. There was also no evidence to suggest that defendants held any type of "possessory property right" in the dog as provided under section 67-4.1(a)(3). At best, plaintiff's evidence tended to show that defendants allowed their son to keep the dog on property owned by them, despite the fact that they were aware of previous incidents involving the dog. Given

the lack of evidence that defendants "under[took] to manage, control, or care for the animal as owners in general are accustomed to do," plaintiff failed to establish the essential element of her *prima facie* case that defendants were the owners or keepers of the dog. *Swain*, 269 N.C. at 51, 152 S.E.2d at 302; *see also Holcomb*, 153 N.C. App. at 417, 570 S.E.2d at 251; *Joslyn*, 149 N.C. App. at 630, 561 S.E.2d at 537.

Plaintiff argues that, as owners of the property, defendants had the ability to "evict" Blockhead, thereby establishing "control" over him. We are unpersuaded by this argument. In both *Joslyn* and *Holcomb*, the defendants were landlords who had prior knowledge of the potential viciousness of their tenants' dogs. As landlords, the defendants in those cases could have required removal of the animals from their property. Nevertheless, this Court held in both cases that the property owners could not be held liable as "keepers" of the dogs without further evidence of appropriate incidents of ownership. Indeed, the Court in *Holcomb* specifically rejected this ground as a basis for liability. We note that, if plaintiff's position were adopted, every landlord in North Carolina could be deemed the "keeper" of their tenants' pets and accordingly held liable for any injuries caused by such animals.

As plaintiff failed to present sufficient evidence to support the jury verdict against defendants, the trial court erred in denying defendants' motion for directed verdict at the close of plaintiff's evidence and in denying defendants' motion for judgment notwithstanding the verdict after the trial. We therefore vacate the judgment against defendants and remand this case to the trial court for entry of an order consistent with this opinion.

Vacated and remanded.

Judges HUDSON and CAMPBELL concur.