B & F SLOSMAN, A NORTH CAROLINA GENERAL PARTNERSHIP, PLAINTIFF V.
SONOPRESS, INC., A DELAWARE CORPORATION, DEFENDANT

No. COA00-1465

(Filed 28 December 2001)

## 1. Statute of Frauds— commercial lease agreement—directed verdict—estoppel

The trial court did not err by directing verdict in favor of defendant on plaintiff's claim that defendant breached an oral agreement to lease the pertinent plant for five years based on the trial court's determination that the parties' negotiation summary concerning a commercial lease did not satisfy the statute of frauds, because: (1) a review of the negotiation summary revealed a lack of the mutuality of agreement necessary for the formation of a contract since it simply outlined the various stages in the negotiation process and does not include any language signifying an intention on the part of defendant to be legally bound to a five-year lease; (2) plaintiff's evidence failed to establish that the purchasing manager had the authority to bind defendant to a five-year lease; and (3) defendant was not estopped from raising the statute of frauds as an affirmative defense since the affirmative acts identified by plaintiff did not constitute material misrepresentation or fraud, plaintiff has not shown that defendant intentionally or fraudulently failed to disclose information, the parties were sophisticated businessmen who were experienced with transactions involving commercial leases, and the fact that defendant occupied the additional space during the negotiation process and agreed to pay a monthly rent does not result in defendant's taking two inconsistent positions.

**2. Quantum meruit— commercial lease agreement—directed verdict**

The trial court did not err by directing verdict in favor of defendant on plaintiff's claim for quantum meruit arising out of the breach of an alleged oral commercial lease agreement, because plaintiff has been compensated for any benefit it conferred upon defendant.

**3. Unfair Trade Practices— commercial lease agreement— directed verdict**

The trial court did not err by directing verdict in favor of defendant on plaintiff's claim for unfair and deceptive business practices arising out of alleged fraud and the breach of an alleged oral commercial lease agreement, because plaintiff has failed to establish a prima facie case.

Appeal by plaintiff from judgment entered 20 April 2000 by Judge Russell J. Lanier, Jr. in Buncombe County Superior Court. Heard in the Court of Appeals 11 October 2001.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Albert L. Sneed, Jr., for plaintiff-appellant.*

*Hoguet, Newman & Regal, LLP, by Howard A. Wintner, pro hac vice; and Dungan & Mitchell, P.A., by Robert E. Dungan, for defendant-appellee.*

WALKER, Judge.

Plaintiff initiated this action on 7 July 1998 alleging claims for breach of a lease, *quantum meruit*, and unfair and deceptive business practices. The matter came on for trial on 17 April 2000 and, at the close of plaintiff's evidence, defendant moved for a directed verdict. After considering the evidence, the trial court granted defendant's motion with respect to all of plaintiff's claims. The facts at this stage of the proceedings may be summarized as follows:

Plaintiff is a North Carolina general partnership owned by two brothers, Benson and Fred Slosman. Defendant is a Delaware corporation headquartered in Gutersloh, Germany, and is owned by the Bertelsmann Group. In the fall of 1996, plaintiff purchased the Champion Plant (plant) located in Weaverville. The plant encompasses 119,613 square feet, which is divided into three sections and is

B & F SLOSMAN v. SONOPRESS, INC.

[148 N.C. App. 81 (2001)]

designed for both warehousing and manufacturing. In December 1996, plaintiff entered into a two-year lease with Asheville Warehousing, Inc. (AWI), a recycling business owned by Fred Slosman. The lease allowed AWI to occupy two of the plant's smaller sections.

In January 1997, defendant approached plaintiff about leasing space in the plant. Following discussions, the parties agreed that defendant would occupy the plant's remaining section for one year at a rate of $1.625 per square foot. Defendant began moving into the plant in March 1997. Shortly thereafter, defendant informed plaintiff that it was interested in leasing the entire plant. Plaintiff responded that it was already under a two-year lease with AWI and AWI would not vacate the plant without receiving moving expenses and a rent subsidy. Thereafter, the parties began negotiating a potential lease for the entire plant.

On 30 May 1997, as a result of these negotiations, plaintiff sent a letter to defendant which was designed to serve as an interim agreement. The letter outlined various lease conditions including: defendant's payment of $197,500 for AWI's moving expenses and a rent subsidy, financial terms for a three-year occupancy, and plaintiff's completion of certain plant upgrades. Plaintiff also requested that defendant sign and return the letter. Defendant declined to sign the letter but did agree to meet with Benson and Fred Slosman on 20 June 1997. Present at this meeting were several of defendant's employees, including the Vice President of Operations, Richard Smith (Smith) and a purchasing manager, Bob Tanko (Tanko). During this meeting, the parties continued to negotiate the terms of a lease and, in particular, the payment of AWI's moving expenses and a rent subsidy. Defendant's employees testified at trial that they also expressed reservations concerning any lease which extended longer than two or three years and that they informed the Slosmans that a five-year lease would have to be approved by defendant's officials in Germany. At the conclusion of the meeting, plaintiff submitted an offer to "blend" the rent subsidy into a five-year lease and suggested that the moving expenses be paid up front or "blended" into the monthly rent payments, at defendant's option.

Four days later, plaintiff sent a letter to Tanko outlining the terms of this offer and requesting that he "let me know which option to proceed on so that we can have a lease prepared." Tanko made no written response to plaintiff's request but did prepare for defendant a

"Negotiation Summary," which incorporated plaintiff's offer. Nonetheless, plaintiff permitted defendant to begin occupying the two sections within the plant that AWI was vacating.

The evidence shows that the parties intended to formalize their negotiations with a written lease. On 22 July 1997, plaintiff sent defendant a proposed five-year lease. One week later, defendant inquired as to whether plaintiff would be willing to accept a two-year lease with an option for another two years. Plaintiff rejected this counteroffer and continued to hold out for a five-year lease. Meanwhile, AWI signed a lease with S & S Associates for space in another property. Benson Slosman signed the lease as a general partner of S & S Associates.

By October 1997, defendant was occupying the entire plant and was paying plaintiff rent in the amount of $36,481.97 per month. However, defendant refused to sign the five-year lease which plaintiff had requested. This arrangement continued until 17 February 1998, when defendant sent to plaintiff a written notice that it would no longer be "month to month leasing" the plant effective 31 March 1998 and would be vacating the plant.

With this appeal, plaintiff argues it presented sufficient evidence to withstand defendant's motion for directed verdict. The purpose of a motion for directed verdict is to test the legal sufficiency of the evidence to take a case to the jury. N.C. Gen. Stat. § 1A-1, Rule 50(a) (1999); *DeHart v. R/S Financial Corp.*, 78 N.C. App. 93, 98, 337 S.E.2d 94, 98 (1985), *cert. denied*, 316 N.C. 376, 342 S.E.2d 893 (1986). Accordingly, a defendant is not entitled to a directed verdict unless the court, after viewing the evidence in a light most favorable to the plaintiff, determines the plaintiff has failed to establish a *prima facie* case or right to relief. *Goodwin v. Investors Life Insurance Co. of North America*, 332 N.C. 326, 329, 419 S.E.2d 766, 768 (1992).

## I. Statute of Frauds

[1] Plaintiff first contends that it presented sufficient evidence to support its claim that defendant breached an agreement to lease the plant for five years. Defendant counters that any alleged lease is unenforceable under the statute of frauds. Plaintiff responds by arguing that defendant should be estopped from raising the statute of frauds as an affirmative defense.

The statute of frauds provides in pertinent part that:

**B & F SLOSMAN v. SONOPRESS, INC.**

[148 N.C. App. 81 (2001)]

all . . . leases and contracts for leasing lands exceeding in dura-
tion three years from the making thereof, shall be void unless said
contract, or some memorandum or note thereof, be put in writing
and signed by the party to be charged therewith, or by some other
person by him thereto lawfully authorized.

N.C. Gen. Stat. § 22-2 (1999). Plaintiff asserts that, although the par-
ties had not executed a written lease, the "Negotiation Summary"
prepared and signed by Tanko following the 20 June 1997 meeting,
constitutes a memorandum sufficient to satisfy the statute of frauds
requirement.

Our review of the "Negotiation Summary" reveals that it simply
outlined the various stages in the negotiation process and does not
include any language signifying an intention on the part of defendant
to be legally bound to a five-year lease. Therefore, the "Negotiation
Summary" lacks the mutuality of agreement necessary for the forma-
tion of a contract. *See McCraw v. Llewellyn*, 256 N.C. 213, 217, 123
S.E.2d 575, 578 (1962) (holding that to be enforceable under the
statute of frauds a writing must show the essential elements of a con-
tract including evidence of a mutuality of agreement between the par-
ties). Furthermore, plaintiff's evidence fails to establish that Tanko
was authorized to bind defendant to a five-year lease. *See generally
Fuller v. Southland Corp.*, 57 N.C. App. 1, 290 S.E.2d 754, *cert.
denied*, 306 N.C. 556, 294 S.E.2d 223 (1982). Therefore, we conclude
plaintiff's claim that the "Negotiation Summary" satisfies the statute
of frauds has no merit.

Plaintiff also asserts that defendant should be estopped from rais-
ing the statute of frauds as an affirmative defense under the theories
of: (1) estoppel by fraud or misrepresentation; (2) equitable estoppel
based upon wrongful silence and fraud by silence; and (3) equitable
estoppel based upon an acceptance of benefits.

"The doctrine of estoppel rests upon principles of equity and is
designed to aid the law in the administration of justice when without
its intervention injustice would result." *Thompson v. Soles*, 299 N.C.
484, 486, 263 S.E.2d 599, 602 (1980). In appropriate cases, equitable
estoppel may override the statute of frauds so as to enforce an other-
wise unenforceable agreement. *Computer Decisions, Inc. v. Rouse
Office Mgmt. of N.C.*, 124 N.C. App. 383, 387, 477 S.E.2d 262, 264
(1996), *disc. rev. denied*, 345 N.C. 340, 483 S.E.2d 163 (1997). When
faced with oral agreements involving real property interests, our
courts have limited the application of the equitable estoppel doctrine

to situations where the party seeking to invoke the statute of frauds has engaged in "plain, clear and deliberate fraud." *McKinley v. Hinnant*, 242 N.C. 245, 253, 87 S.E.2d 568, 574 (1955); *see also Dunn v. Dunn*, 24 N.C. App. 713, 716, 212 S.E.2d 407, 409, *cert. denied*, 287 N.C. 258, 214 S.E.2d 430 (1975). The rationale for applying the equitable estoppel doctrine is quite obvious: A party who engages in fraud should not be permitted to shield itself from liability through the use of a statute which our legislature specifically designed to prevent fraud.

To establish fraud, a plaintiff must demonstrate that: (1) the defendant made a false representation relating to some material past or existing fact; (2) when the representation was made, defendant knew or reasonably should have known that it was false; (3) defendant made the representation with the intention that the plaintiff act upon it; (4) the plaintiff did in fact reasonably act upon it; and (5) the plaintiff suffered injury. *Cofield v. Griffin*, 238 N.C. 377, 379, 78 S.E.2d 131, 133 (1953).

Plaintiff has identified "four affirmative acts of fraud" committed by defendant's employees which it alleges are sufficient to justify estopping defendant: (1) a 20 June 1997 representation by Smith to plaintiff that the parties had an agreement; (2) an oral acceptance of plaintiff's offer by Tanko when he had no authority to make such an acceptance; (3) a statement by Smith to Fred Slosman that the lease was being signed; and (4) a statement by one of defendant's employees to Benson Slosman that the lease was being signed in Germany and hand carried back to the United States. Based on our careful review of the record, we conclude these "affirmative acts" were merely statements made by defendant's employees during the negotiating process in anticipation of the lease being approved by officials in Germany. Plaintiff's evidence fails to show that the employees knew that the statements they made were false or that they made the statements with an intention to deceive plaintiff. Furthermore, the statements generally involved future occurrences, rather than past or existing facts. *See generally Home Electric Co. v. Hall and Underdown Heating and Air Cond. Co.*, 86 N.C. App. 540, 543, 358 S.E.2d 539, 541 (1987), *affirmed*, 322 N.C. 107, 366 S.E.2d 441 (1988). Therefore, we conclude the "affirmative acts" identified by plaintiff did not constitute material misrepresentations or fraud.

Plaintiff further contends that defendant should be estopped because defendant intentionally and fraudulently failed to disclose

**B & F SLOSMAN v. SONOPRESS, INC.**

[148 N.C. App. 81 (2001)]

three pertinent facts: (1) its internal approval process; (2) that it had no intention of agreeing to a five-year lease; and (3) that it had rejected the lease terms plaintiff outlined in its letter of 24 June 1997. However, plaintiff fails to cite any authority which supports the proposition that there would be a duty to disclose under the facts and circumstances of this case. Indeed, this Court has twice addressed similar situations and found that the lessor had no such duty to disclose. *See Computer Decisions*, 124 N.C. App. at 389, 477 S.E.2d at 265-66 (holding that where the two parties were sophisticated in negotiating commercial real estate transactions, the lessor did not have a duty to disclose to the lessee the fact that it was negotiating a lease with another party for the same premises); and *C.F.R. Foods, Inc. v. Randolph Development Co.*, 107 N.C. App. 584, 589, 421 S.E.2d 386, 389, *disc. rev. denied*, 333 N.C. 166, 424 S.E.2d 906 (1992) (holding a commercial vendor owed no duty to disclose to a commercial vendee the presence of a landfill containing organic materials where vendee had full opportunity to make pertinent inquiries and failed to do so).

Here, the evidence shows the Bensons were sophisticated businessmen, who were experienced with transactions involving commercial leases. Benson Slosman testified he had negotiated approximately one hundred commercial leases and that he was aware of the requirement that long-term leases be in writing. Fred Slosman also testified that, aside from B & F Slosman, he had extensive business dealings, including "some experience" with commercial leases and real estate contracts. As such, we find, under the circumstances of this case, that plaintiff has not shown that defendant intentionally or fraudulently failed to disclose to plaintiff its internal approval process, that it never intended to sign a five-year lease, or that it had rejected plaintiff's outlined lease terms. *See Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119, *disc. rev. denied*, 317 N.C. 703, 347 S.E.2d 41 (1986) (duty to disclose arises when parties are in a fiduciary relationship or in arms length negotiation and one of the parties has taken affirmative steps to conceal material facts or has knowledge of a latent defect of which the other party is both ignorant and unable to discover through reasonable diligence).

Finally, plaintiff argues that, under the theory of quasi-estoppel, it conferred upon defendant a benefit by making adjacent space in the plant available for defendant's immediate occupancy. Therefore, by accepting this benefit, defendant is estopped from raising the statute of frauds defense.

In support of its argument, plaintiff relies on our Supreme Court's decision in *Brooks v. Hackney*, 329 N.C. 166, 404 S.E.2d 854 (1991). However, *Brooks* recognized the applicability of quasi-estoppel in a context notably inapposite to the facts of this case. In *Brooks*, the parties had entered into a *written agreement* for the sale of real estate. Over the course of eight years, the plaintiff used the real estate and made monthly payments pursuant to the terms of the agreement. However, after a disagreement arose, the plaintiff demanded the return of the monthly payments he had made over the previous eight years, arguing that because the agreement did not clearly describe the real estate, it failed to satisfy the statute of frauds. Our Supreme Court agreed that the written agreement did not adequately describe the real estate but held that plaintiff was estopped from taking advantage of the faulty description. The Court stated: "It is well settled that 'a party will not be allowed to accept benefits which arise from certain terms of a contract and at the same time deny the effect of other terms of the same agreement.' " *Id.* at 173, 404 S.E.2d at 859, *(quoting Advertising, Inc. v. Harper*, 7 N.C. App. 501, 505, 172 S.E.2d 793, 795 (1970))*.

In contrast, plaintiff, in this case, asserts that defendant, in occupying the entire plant, received benefits it would have received under a written lease. However, unlike *Brooks*, defendant did not execute a written agreement. Such a construction as plaintiff contends would conflict with the essential purpose of quasi-estoppel, which is to prevent a party from benefitting by taking two clearly inconsistent positions. *See Carolina Medicorp v. Bd. of Trustees of the State Medical Plan*, 118 N.C. App. 485, 492, 456 S.E.2d 116, 120 (1995). Here, defendant argues that the parties were only in the process of negotiating a lease for additional space. The fact that defendant occupied the additional space during the negotiation process and agreed to pay a monthly rent does not result in defendant's taking two inconsistent positions. *See Kent v. Humphries*, 303 N.C. 675, 679, 281 S.E.2d 43, 46 (1981) (holding when a tenant enters into possession under an invalid lease and tenders rent which is accepted by the landlord, a periodic tenancy is created and the period of the tenancy is determined by the interval between rental payments). Thus, we find no merit in plaintiff's quasi-estoppel argument.

We conclude the trial court properly determined that the "Negotiation Summary" did not satisfy the statute of frauds. Further, plaintiff has failed to present a *prima facie* case showing defendant should be estopped from raising the statute of frauds as an affirma-

**B & F SLOSMAN v. SONOPRESS, INC.**

[148 N.C. App. 81 (2001)]

tive defense. Therefore, we overrule plaintiff's assignments of error on these issues.

## II. *Quantum Meruit*

**[2]** Next, plaintiff contends it presented sufficient evidence on its claim for *quantum meruit* to withstand a directed verdict.

"*Quantum meruit* operates as an equitable remedy based upon a quasi contract or a contract implied in law, such that a party may recover for the reasonable value of materials and services rendered in order to prevent unjust enrichment." *Data General Corp. v. County of Durham*, 143 N.C. App. 97, 103, 545 S.E.2d 243, 248 (2001). Plaintiff asserts that it conferred upon defendant the benefit of "providing much needed, but already occupied, space" at a cost of $192,500. However, Benson Slosman admitted during cross-examination that by permitting defendant to occupy the entire plant after AWI vacated, plaintiff received from defendant rental payments approximating $201,000. Therefore, we conclude plaintiff has been compensated for any benefit it conferred upon defendant and find the trial court did not err in directing a verdict on its *quantum meruit* claim.

## III. Unfair and Deceptive Business Practices

**[3]** Finally, plaintiff argues it presented sufficient evidence to withstand a directed verdict on its claim for unfair and deceptive business practices.

To prevail on an unfair and deceptive business practice claim, a plaintiff must show: (1) that defendant committed an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; (3) which proximately causes actual injury to plaintiff. *Furr v. Fonville Morisey Realty, Inc.*, 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998). The determination of whether a particular act is unfair or deceptive is a question of law for the court. *Gray v. North Carolina Ins. Underwriting Ass'n*, 132 N.C. App. 63, 510 S.E.2d 396 (1999), *reversed on other grounds*, 352 N.C. 61, 529 S.E.2d 676 (2000). The essence of plaintiff's unfair and deceptive business practices claim is that defendant committed fraud and breached an alleged lease. Having determined that plaintiff has failed to make a *prima facie* case with respect to each of these claims, we likewise conclude plaintiff has not established a claim for unfair and deceptive business practices.

In sum, after reviewing the record in a light most favorable to plaintiff, we conclude plaintiff has not established a *prima facie* case

for breach of an alleged lease, *quantum meruit,* or unfair and deceptive business practices. Accordingly, we affirm the trial court's grant of a directed verdict for defendant on all of plaintiff's claims.

Affirmed.

Judges TYSON and SMITH concur.