CHRISTOPHER R. HOWLETT, AND RICHARD B. WILLIAMS, PLAINTIFFS V. CSB, LLC, AND CARDINAL STATE BANK, DEFENDANTS

No. COA03-746

(Filed 15 June 2004)

**1. Statute of Frauds— proposed lease and cover letter— mutual assent not present**

A proposed lease and a cover letter did not satisfy the statute of frauds and the trial court did not err by granting summary judgment for defendants. The letter on its face showed that defendants had not yet agreed to the lease; although plaintiffs argued that an agreement was subsequently reached, a writing cannot comply with the statute of frauds when it predates the agreement of which it is the memorial.

**2. Discovery— business plan—not relevant to existence of lease**

A business plan was not relevant to the dispositive issue of whether the parties entered into a lease enforceable under the statute of frauds, and the trial court did not abuse its discretion by denying a motion to compel production of the plan.

Appeal by plaintiffs from order entered 18 June 2002 by Judge Wade Barber and from judgment entered 23 August 2002 by Judge W. Osmond Smith, III in Orange County Superior Court. Heard in the Court of Appeals 3 March 2004.

*Stark Law Group, P.L.L.C., by Thomas H. Stark, for plaintiffs-appellants.*

*Kennon, Craver, Belo, Craig & McKee, P.L.L.C., by Joel M. Craig and Erin M. Locklear, for defendants-appellees.*

GEER, Judge.

Plaintiffs Christopher R. Howlett and Richard B. Williams appeal from the trial court's judgment granting defendants' motion for a directed verdict based on the statute of frauds and dismissing this action for breach of a commercial lease. We hold that because the writings relied upon by plaintiffs do not include language indicating an intention by defendants to be bound, plaintiffs' evidence of an oral agreement to enter into a lease was insufficient to satisfy the statute

of frauds, and the trial court therefore did not err in granting defendants' motion for a directed verdict.

Facts

Plaintiffs' evidence tended to show the following. Plaintiffs Howlett and Williams are engaged in the real estate business in the Research Triangle area. At some time prior to the summer of 2000, Williams' friend John Mallard informed him that he was planning to charter a new bank. Defendant CSB, LLC was formed to organize the new bank, to be called Cardinal State Bank (defendants are collectively identified as "CSB").

During the summer of 2000, plaintiffs discovered a piece of property for sale on the corner of Estes Drive and Franklin Street in Chapel Hill ("the property") that they thought would be an excellent location for Mallard's new bank. After plaintiffs entered into a contract to purchase the property on 23 October 2000, Williams contacted Mallard to inquire whether he would be interested in opening a CSB branch on the property. Mallard expressed interest and told Williams not to market the property to anyone else. In anticipation of leasing the property to CSB, Williams and Howlett did not attempt to market the property to other potential lessees.

During the fall of 2000 and continuing into January 2001, Mallard and plaintiffs engaged in lease negotiations in a series of letters. Each of the three letters sent by Mallard to plaintiffs with proposed lease terms stated: "Nothing in this letter shall be considered to obligate CSB, LLC, or its nominee, to enter into a lease agreement for the premises or to purchase the same. Only the terms of a subsequently written lease agreement shall obligate any of the parties."

On 17 January 2001, Mallard sent another letter to plaintiffs along with an enclosure entitled "Lease Agreement" providing for a five-year lease. The letter stated:

> Enclosed please find a copy of the proposed Lease Agreement for the above referenced property wherein CSB, LLC, or its nominee, is the Tenant. As a condition of our signing this Lease Agreement, we propose that:
>
> A. You waive the payment of the Ten Thousand and No/100 Dollars ($10,000.00) non-refundable deposit that was to be paid to you on or about March 1, 2001; and

**HOWLETT v. CSB, LLC**

[164 N.C. App. 715 (2004)]

B. You agree to pay Fifty Percent (50%) of our "due diligence" costs incurred in inspecting the leased property and in determining its satisfactory condition for use as a bank.

Given the many terms in the Lease Agreement that favor the Landlord's position, we think that the above are reasonable requests prior to our agreeing to execute the said Lease.

On 25 January 2001, the parties met to discuss the proposed lease and came to an agreement as to the conditions specified in the above letter. At the meeting, Mallard shook Williams' hand and said, "We have an agreement." Mallard, however, later informed Williams that the board of CSB had decided not to lease the property due to concern over possible underground storage tanks and the parties never executed the lease agreement.

On 11 July 2001, plaintiffs filed a complaint asserting two claims: (1) breach of a commercial lease; and (2) negligent misrepresentation during the lease negotiations. Defendants filed an answer on 22 August 2001, raising various defenses including the statute of frauds. During discovery, plaintiffs filed a motion to compel production of documents that Judge Wade Barber denied on 18 June 2002. The case went to trial before a jury at the 19 August 2002 civil session of Orange County Superior Court with Judge W. Osmond Smith, III presiding. At the conclusion of plaintiffs' evidence, defendants moved for a directed verdict on both of plaintiffs' claims. On 23 August 2002, Judge Smith granted the motion and entered judgment dismissing the lawsuit with prejudice. Plaintiffs filed notice of appeal from the judgment on 9 September 2002.

## Standard of Review

The purpose of a motion for a directed verdict pursuant to N.C.R. Civ. P. 50(a) is to test the legal sufficiency of the evidence to take a case to the jury. *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 84, 557 S.E.2d 176, 179 (2001), *disc. review denied*, 355 N.C. 283, 560 S.E.2d 795 (2002). "Accordingly, a defendant is not entitled to a directed verdict unless the court, after viewing the evidence in a light most favorable to the plaintiff, determines the plaintiff has failed to establish a *prima facie* case or right to relief." *Id.* If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied. *Clark v. Moore*, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580-81, (1983). Conflicts and inconsistencies in the evidence are to be resolved in

favor of the non-moving party. *Davis & Davis Realty Co. v. Rodgers,* 96 N.C. App. 306, 308-09, 385 S.E.2d 539, 541 (1989), *disc. review denied,* 326 N.C. 263, 389 S.E.2d 112 (1990).

This Court reviews a trial court's order granting a motion for directed verdict *de novo. Denson v. Richmond County,* 159 N.C. App. 408, 411-12, 583 S.E.2d 318, 320 (2003). This Court must affirm the ruling of the trial court if the directed verdict was proper for any of the grounds argued by the defendant in the trial court. *Cobb v. Reitter,* 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992) (appellate court can properly affirm directed verdict only on a ground stated in defendant's motion at trial).

## Discussion

[1] With respect to the breach of contract claim, defendants argued to the trial court, in support of their motion for directed verdict, that plaintiffs had not satisfied the statute of frauds and that conditions precedent to a valid agreement had not been met. Plaintiffs contend on appeal that they presented sufficient evidence on both points to take the case to the jury. Because we hold that the trial court properly directed a verdict based on the statute of frauds, we need not reach the issue of conditions precedent. *Id.* ("We must affirm the ruling of the trial court if the directed verdict was proper for either of the two grounds argued by the defendant in the trial court.").

North Carolina's statute of frauds provides in its relevant portion:

All . . . leases and contracts for leasing lands exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.

N.C. Gen. Stat. § 22-2 (2003). As this Court has explained, the statute of frauds' requirement of a writing is satisfied as follows:

If all essential elements of a contract to convey or lease land have been agreed upon by the parties and are contained in some writing or memoranda, signed by the party to be charged or his authorized agent, then there can still be a valid, binding contract to convey or lease land, even if there is no agreement on other non-essential terms. Furthermore, an enforceable lease or conveyance of land need not be set out in a single instrument, but may arise from a series of separate but related letters or

other documents signed by the person to be charged or his authorized agent.

*Satterfield v. Pappas*, 67 N.C. App. 28, 35, 312 S.E.2d 511, 515-16 (internal citations omitted), *disc. review denied*, 311 N.C. 403, 319 S.E.2d 274 (1984). In short, the required writing may be composed of more than one document and need only set forth the contract's essential terms. As part of the required essential terms, however, the writing or writings must show the intent and obligation of the party to be bound to the contract. *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C.*, 124 N.C. App. 383, 388, 477 S.E.2d 262, 265 (1996), *disc. review denied*, 345 N.C. 340, 483 S.E.2d 163 (1997).

Plaintiffs contend that although the parties had not executed a written lease, the 17 January 2001 cover letter prepared and signed by Mallard, to which a "proposed Lease Agreement" for a five-year lease was attached, constituted a memorandum sufficient to satisfy the statute of frauds. Defendants counter that plaintiffs have not produced a writing (or combination of writings) signed by defendants documenting a mutuality of assent and an intent to be bound. We find this Court's decisions in *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C.*, 124 N.C. App. 383, 388, 477 S.E.2d 262, 265 (1996), *disc. review denied*, 345 N.C. 340, 483 S.E.2d 163 (1997) and *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 84, 557 S.E.2d 176, 179 (2001), *disc. review denied*, 355 N.C. 283, 560 S.E.2d 795 (2002) cited by defendants, materially indistinguishable and therefore controlling.

In *Computer Decisions*, 124 N.C. App. at 385-86, 477 S.E.2d at 263-64, representatives of the parties met to discuss entering into a lease and, after reaching a verbal agreement as to the major terms, the defendant's vice-president told the plaintiff's president that they had a deal. To serve as the basis for a draft lease, the defendant lessor then created a written internal document signed by two vice presidents and specifying the material terms. The parties continued to negotiate over non-essential terms and to exchange drafts of proposed lease agreements. The parties ultimately never executed a final lease and the defendant leased the premises to another party. The plaintiff lessee sued for breach of contract. This Court held that the internal form did not satisfy the statute of frauds:

We find the internal request form relied upon by plaintiff insufficient to satisfy the statute of frauds . . . [The form] requests creation of a draft lease and sets out the terms to be included. It is signed by two Rouse vice presidents, and includes the name of

the tenant, description of the premises, rent, lease term, and additional provisions. *However, there is no indication, from the face of the document, that the parties made an agreement to be bound. This writing fails to show the essential elements of a contract.*

*We also hold that the 18 December 1992 draft lease, either alone or combined with the internal form, is insufficient under the statute of frauds as it too fails to contain evidence of contract formation.* Since the alleged oral lease agreement, even if proven to exist, is unenforceable under the statute of frauds, the trial court did not err in granting summary judgment on plaintiff's claim for breach of lease.

*Id.* at 388, 477 S.E.2d at 265 (internal citation omitted; emphasis added).

Similarly, in *B & F Slosman*, 148 N.C. App. at 85, 557 S.E.2d at 179, the defendant's employee prepared and signed a "Negotiation Summary" incorporating the terms of the plaintiff's offer, but the parties never executed a written lease. Although the plaintiff contended that the summary constituted a memorandum sufficient to satisfy the statute of frauds, this Court disagreed:

Our review of the "Negotiation Summary" reveals that it simply outlined the various stages in the negotiation process and *does not include any language signifying an intention on the part of defendant to be legally bound to a five-year lease.* Therefore, the "Negotiation Summary" lacks the mutuality of agreement necessary for the formation of a contract.

*Id.* (emphasis added).

In this case, even though the 17 January 2001 cover letter signed by Mallard and attached proposed lease agreement contain certain essential lease terms, the documents do not manifest an intent by defendants to be legally bound. The letter refers to the enclosed *"proposed Lease Agreement"* and proposes additional terms "[a]s a condition of [CSB's] signing this Lease Agreement." (Emphasis added.) Finally, the letter closes with the statement that "we think that the above are reasonable requests *prior to our agreeing to execute the said Lease.*" (Emphasis added.) The language of the letter does not evidence the mutuality of assent and intention to be bound necessary to comply with the statute of frauds. To the contrary, it shows on its face that defendants had not yet agreed to enter into the lease.

Although plaintiffs urge that they subsequently reached agreement on all of the terms, the 17 January 2001 letter and attached proposed lease cannot serve as a "memorandum" of any later agreement that the parties may have reached during the 25 January 2001 meeting. A writing cannot comply with the statute of frauds when it predates the agreement that it is purportedly memorializing. As our Supreme Court has explained, "It is not necessary . . . that a writing be signed at the time a contract is made. 'The writing is not the contract; it is the party's admission that the contract was made.' It is sufficient if *subsequent to the contract* a memorandum thereof is reduced to writing and signed by the party to be charged." *Millikan v. Simmons*, 244 N.C. 195, 199-200, 93 S.E.2d 59, 62-63 (1956) (quoting 9 John H. Wigmore, *Evidence* § 2454, at 175 (3d ed.); emphasis added).

The cases cited by plaintiffs do not require a different result. In each of those cases, the plaintiff had offered evidence that the parties had actually entered into a written contract. None of those cases involved a plaintiff's failure to present evidence of a writing indicating an intent by the defendant to be bound by the contract. *See Pee Dee Oil Co. v. Quality Oil Co.*, 80 N.C. App. 219, 223, 341 S.E.2d 113, 116 (where plaintiff's evidence tended to show that parties entered into a written contract, statute of frauds was satisfied because each party signed a writing that met its requirements), *disc. review denied*, 317 N.C. 706, 347 S.E.2d 438 (1986); *House v. Stokes*, 66 N.C. App. 636, 638, 311 S.E.2d 671, 673 ("There is no question that the contract in this case was in writing and signed by all the parties. The question is whether the contract was patently ambiguous, and, therefore, void under the statute of frauds."), *cert. denied*, 311 N.C. 755, 321 S.E.2d 133 (1984); *Mezzanotte v. Freeland*, 20 N.C. App. 11, 16, 200 S.E.2d 410, 414 (1973) (evidence was undisputed that parties had signed a written contract that was sufficient to satisfy statute of frauds when taken together with an attachment containing an adequate description of property), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974).

In sum, plaintiffs failed to present sufficient evidence to avoid the statute of frauds. Accordingly, the trial court properly granted defendants' motion for a directed verdict as to plaintiffs' breach of contract claim.

Plaintiffs also assign error to the trial court's directed verdict as to their claim for negligent misrepresentation. This claim, brought in the alternative to the claim for breach of a lease, was based on

Mallard's representation to plaintiffs that he did not need the CSB board's approval to enter into a lease agreement on behalf of CSB. Plaintiffs advance a very narrow argument on appeal, arguing that "[i]f the breach of lease claim were found not to stand due to an authority issue, these facts should have been submitted to the jury for determination as an alternative claim for negligent misrepresentation." Since our resolution of plaintiffs' breach of contract claim does not turn on an authority issue, we need not address this assignment of error.

[2] Finally, plaintiffs assign error to the trial court's denial of their motion to compel production of documents. During discovery, plaintiffs requested production of "[a]ny and all documents referring to, constituting or comprising the 'business plan' " of CSB. Defendants objected on the ground that the request sought proprietary and confidential business information irrelevant to the action and not reasonably calculated to lead to admissible evidence. The trial court denied plaintiffs' motion to compel production of the business plan documents.

"Under the rules governing discovery, a party may obtain discovery concerning any unprivileged matter as long as relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence." *Wagoner v. Elkin City Schools' Bd. of Educ.*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994). A motion to compel production of documents is committed to the trial court's sound discretion and the trial court's ruling will not be reversed absent an abuse of that discretion. *Id.* "An abuse of discretion occurs only when a court makes a patently arbitrary decision, manifestly unsupported by reason." *Buford v. General Motors Corp.*, 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994).

Plaintiffs argue on appeal that the request for the business plan was "interposed for the purpose of obtaining full disclosure of CSB's state of mind at the time it notified Plaintiffs that it did not intend to abide by the lease agreement." We need not decide whether this purpose was relevant to plaintiffs' causes of action generally since plaintiffs do not demonstrate that the business plan was relevant to the question ultimately dispositive here: whether a contract enforceable under the statute of frauds existed. In the absence of a showing that the discovery sought was relevant to that question, any error in denying plaintiffs' motion to compel was harmless.

No error.

Chief Judge MARTIN and Judge HUDSON concur.